Jesse Ray RAMSEY, Respondent,

v.

Marilyn Morgan RAMSEY, Appellant.

No. 72312.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 17, 1998.

Dale E. Gerecke, Bradshaw, Steele, Cochrane & Berens, L.C., Cape Girardeau, for appellant.

Kimberly S. Essary-Price, John L. Oliver, Jr., Oliver, Oliver & Waltz, P.C., Cape Girardeau, for respondent.

SIMON, Judge.

Marilyn Ramsey, mother, appeals the trial court's termination of maintenance payments from Jesse Ramsey, father. On appeal, mother contends that the trial court erred in terminating the maintenance obligation of father because the judgment is not supported by substantial evidence, is against the weight of the evidence, and erroneously declares and applies the law in that there was no showing of a change in circumstances so substantial and continuing as to make the terms of the prior decree unreasonable as the mother was only employed for two months before she took a leave of absence to care for the parties' seriously ill child. We reverse and remand.

The trial court's judgment will be sustained unless there is no substantial evidence to support its decision, its judgment is against the weight of the evidence, or it erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The record reveals that on August 10, 1994, the marriage of mother and father was dissolved. The Judgment and Decree of Dissolution provided, in pertinent part:

5. Two (2) children were born of this marriage, to wit: Alexis Morgan Ramsey (Lexi), born on July 4, 1990, and Abigale Currie Ramsey, born on September 9, 1991.

* * *

16. On July 9, 1992, the eldest child, Alexis, known as Lexi, was diagnosed with Acute Lymphocytic Leukemia. As a result she needs treatment in St. Louis and Cape Girardeau on a regular basis.

17. [Mother] is college educated, graduating with honors, and holds a Lifetime Teaching Certificate in the State of Missouri as a Special Education Teacher in Learning Disabilities.

18. [Mother], by agreement of the parties, took a voluntary leave of absence from her teaching position to have the first child of the marriage.

19. [Mother] became pregnant again, an area of contention between the parties, resulting in the birth of the second child of the marriage, Abigale Currie Ramsey, born on September 9, 1991. Abigale, known as Abby, has no known health problems at this time.

20. During her pregnancy with the second child [mother] resigned her teaching position with the Cape Girardeau School District. [Mother] remained unemployed until separation and has not sought full-time employment since separation primarily due to the illness of Lexi.

* * *

22. [Father] ultimately took a position with Southeast Hospital as an Emergency Room physician, employment which he continues to hold.

23. By August 7, 1992 Lexi was in remission as to her Leukemia and is currently progressing well in the "Maintenance Phase" of her medical care and treatment during which hospitalizations do not normally occur. She has however experienced numerous illnesses which have required hospitalizations in St. Louis.

24. Lexi's chances for full recovery are statistically excellent, however, she must periodically return for out-patient care and check-ups at St. Louis Children's Hospital as follows:

a. Every six (6) weeks for purposes of an outpatient procedure ...

b. Every twelve (12) weeks over the course of the next year; [Lexi] will be finished with her chemotherapy in July of 1995; thereafter, she will be seen once every six (6) months for one (1) year and then one time a year for the next five (5) years:

25. [Mother], over the objection of [father], administers Lexi's medication, including the chemotherapy injections, although she has no formal medical training and Lexi's local pediatrician ... is available. While [father] objects, this method of operation appears to be normal and less traumatic for young patients.

* * *

66. Although [mother] has been the primary caretaker since birth, taking into consideration all statutory factors under Section 452.375 RSMo, the best interests of the children require that the parties be granted joint physical and joint legal custody so that [father] can be assured of a meaningful and continuing relationship with the minor children.

67. While [mother] has been at home with the children continuously since their respective births, she is able to work and earn a substantial income. She will [intend] to return to work upon dissolution of the marriage and will need to do so. [Mother] is licensed in a teaching specialty where employment should not be difficult to find. Upon obtaining a contract [mother] will be capable of supporting herself. Since contracts for the 1994–1995 school year have already been signed, she has asked for maintenance only until September of 1995 when she fully expects to find full-time employment in and around Cape Girardeau, Missouri.

68. While [mother] has only asked for maintenance until September 1995 it is this court's interpretation of current case law that it cannot order maintenance to terminate on a specific date based on events which are speculative ... There was no evidence, much less substantial evidence, of full-time employment for [mother] in this case, only speculation. In fact, considering the medical condition of Lexi Ramsey, full-time employment for [mother] in 1995 may be even more speculative than for someone else with her training.

* * *

70. The court has reviewed the relevant facts set forth in [Section] 452.335.2 RSMo including: the marital property awarded to [mother]; [mother's] inability to meet her needs independently at this time; [mother's] present unemployment; [mother's] total lack of income and need to find alternative housing; [father's] earnings as a physician of $219,999.00 in 1993 and related fringe benefits; the high standard of living established during the marriage; the obligations and assets awarded to each party and the separate property of each party; the marriage of eight (8) years duration; the ability of [father] to meet his needs while meeting those of [mother]; [father's] misconduct during the marriage ... and all of the other evidence and testimony, and finds that [father] should pay to [mother] maintenance of $2,000.00 per month.

* * *

After the dissolution, father continued to live in Cape Giradeau, work as an emergency room physician, and in April, 1995, remar-

ried. In April, 1996, father filed a motion to modify the decree. We note that the original motion to modify is not included in the record on appeal.

On April 23, 1996, mother executed a contract for employment with the Farmington, Missouri School District (school district) for the 1996–1997 academic school year at a salary of $25,760.00. On July 19, 1996, mother executed a second contract with the school district, which reflected a salary of $27,-195.00. Mother moved to Farmington and began work on August 18, 1996, providing special education for five and six-year-olds.

On September 30, 1996, father filed his first amended motion for modification, contending, in pertinent part that: (1) the judgment and decree of dissolution of marriage contemplated that after approximately one year maintenance should or would cease or at least recognized that two years of maintenance was sufficient enough support for mother; (2) father has paid maintenance to mother well beyond the term of one year, that is, over two years to date; (3) mother never made a genuine, fair, or reasonable attempt to obtain suitable employment of any kind during the first year after the dissolution; (4) mother never made a genuine and good faith attempt to find employment in the local area; (5) mother is fully-employed as a kindergarten teacher for the Farmington School District and is fully sufficient; (6) there is no good reason why father should be required to continue to provide maintenance to mother; and (7) circumstances have regularly, materially and substantially changed since the judgment and decree so as to make the terms and conditions of the judgment and decree as to maintenance unreasonable, unnecessary, unfair and without justification.

On October 6, 1996, mother discovered Lexi had leg and back pain and was running a fever of 104.6 degrees. Mother treated Lexi and notified her supervisor, the principal, she would not be into work the following day due to her daughter's illness.

On October 7, 1996, mother took Lexi to her pediatrician in Cape Giradeau, who examined Lexi, ran tests and referred mother to Lexi's oncologist in St. Louis. In a phone conversation, the oncologist instructed mother to bring Lexi to see her the following morning because she was presenting some signs of a relapse. That evening, mother updated the principal of Lexi's condition and the upcoming trip to St. Louis.

On October 8, 1996, Lexi was admitted to St. Louis Children's Hospital (Children's) and diagnosed as being in full relapse and received a bone marrow aspiration. On October 9, Lexi underwent surgery to place a port-a-cath and remained in the hospital, being treated with chemotherapy.

On October 11, 1996, father filed another amended motion for modification, denominated also as "first amended motion for modification," which was identical, in pertinent part, to his previous motion for modification.

On October 16, 1996, Lexi was discharged, staying first with mother and then with father. From October 21 to October 31, Lexi was readmitted to Children's for treatment of a pseudomonas infection. Upon discharge, Lexi again stayed with mother and then with father. On November 5, 1996, Lexi was readmitted to Children's for white blood cell injections and remained in the hospital until November 11. Upon discharge, Lexi spent a day with father and two days with mother. On November 14, Lexi was readmitted to Children's again for treatment of a pseudomonas infection after mother noted Lexi had a fever and a little dot on her body.

On November 19, 1996, mother filed a motion to dismiss count I of father's first amended motion for modification or for judgment on the pleadings or, in the alternative, motion to strike. Additionally, mother filed an answer, denying the relevant allegations of the motion to modify and admitting that mother signed a contract of employment as a teacher in the school district but asserting mother was on an unpaid leave of absence with the district because Lexi became ill in early October 1996 and her future employment status with the district was uncertain.

On November 21 and November 22, 1996, a hearing was held on father's amended motion to modify. In pertinent part, father testified that he: (1) paid mother $2,000 a month for maintenance for twenty-seven

months; (2) paid $8,000 medical expenses for Lexi the present year; (3) was current and up-to-date on his maintenance obligation; (4) owed about $660,000 on his office building, the note on which was called the previous day; (5) owed the IRS a settlement amount of $16,000; (6) owed $10,000 attorney fees as a result of an IRS audit; and (7) owed $80,000 outstanding attorney's fees from the divorce and modification hearing. Additionally, father testified that he borrowed $25,000 and $44,000 in two loans, and mother's move to Farmington had significantly increased his transportation costs. On cross-examination, father testified that: (1) he built a new home and purchased a farm in the last sixteen to eighteen months, valued at approximately $356,000; (2) he owns farm equipment and livestock valued at $50,200; (2) his income has increased since the divorce; (3) his current wife had chosen not to work to take care of their daughter; (4) his current wife's last income was approximately $24,000 per year; and (5) he had no opinion if Lexi is better off with mother at her side.

In pertinent part, mother testified that she: (1) entered into a contract with the school district for the 1996–1997 school year; (2) began teaching five and six-year-olds on August 18, 1996; (3) indicated to the principal, the first night of Lexi's relapse that she would not be coming to work the next day due to her daughter's illness; (4) updated the principal on Lexi's developments; (5) sent a formal letter to the school district requesting a leave of absence; (6) spent nights at Children's when Lexi was hospitalized and was by her side at all possible times; (7) assisted Lexi in going to the bathroom and feeding her; (8) charted Lexi's progress while at home, compiling the information and making it available to Lexi's doctors; and (9) felt her care and continued presence was beneficial to Lexi.

On December 3, 1996, the trial court entered its judgment, providing in pertinent part:

12. In the Judgment and Decree of the Dissolution of Marriage the Court noted that [mother] asked for spousal maintenance until September of 1995 when she expected to obtain full-time employment as a teacher. Base[d] on said request [father] asks his obligation to pay spousal maintenance be terminated retroactive until one year after the date of said judgment, being August of 1995.

13. The Court has reviewed its Judgment and does not agree with [father's] contention that there was in any way a one year limit placed on the award of spousal maintenance, either explicitly or impliedly. In fact it was pointed out by the Court in the Judgment and Decree that under Missouri case law this Court could not so limit spousal maintenance because [mother's] re-employment was purely speculative at that time.

* * *

16. In August of 1996 [mother] begin teaching in the Farmington School District R–7 and taught the months of August, September, and part of October. She has received no salary since taking voluntary leave.

* * *

21. Understandably, due to the minor child · Alexis' serious illness, [mother] in October of 1996, took an unpaid leave of absence from her employment in order to [be] with the ill minor child.

* * *

23. "The failure of the supported spouse to make a good faith effort to seek employment and achieve financial independence within a reasonable time may form the basis for modification of a maintenance award." (Citation omitted).

24. There was absolutely no evidence that [mother] had not diligently sought employment from the date of the dissolution until her recent employment with the Farmington School District. In fact, [mother] accepted employment some sixty miles from her life-long home and the home of her parents, friends, and other relatives.

25. Accordingly, [father's] request for termination of spousal maintenance prior

to or back to date of service should be denied.

26. "Husband's increase in expenses due to his remarriage is not a ground for modification." (Citations omitted).

27. This court could find no Missouri case allowing a payor to take a voluntary cut in pay, early retirement etc. which would then amount to sufficient cause alone to decrease his/her spousal maintenance obligation. (See Leslie v. Leslie, 827 S.W.2d 180, 183[7] (Mo.banc 1992) which found that a voluntary loss of employment is not a substantial and continuing change in circumstances even where it is induced by rumors of impending layoffs).

28. It is heartbreaking that a minor child of the parties is so seriously ill. Obviously it is in that minor child's best interests that someone be with her continuously when hospitalized and when convalescing at home. However, if the payor cannot voluntarily take actions to decrease income, this Court cannot imagine how [mother's] voluntary leave of absence, although certainly understandable, could in any way revive [father's] obligation to pay spousal maintenance.

29. A trial court can impute income in considering a party's maintenance obligation. Where retirement is voluntary and part of an employer's incentive retirement plan, the consequential reduction in pay does not necessarily entitle a party to a reduction in the party's maintenance obligation. Bradley v. Bradley, 880 S.W.2d 376 (Mo.App. W.D.1994), para 16, citing Hughes v. Hughes, 761 S.W.2d 274, 276–77 (Mo.App.1988). A party's past, present and future earning capacity can be considered as competent evidence of a party's ability to pay maintenance. Id. at 276.

30. The same logic must apply to a payee taking a voluntary leave of absence.

31. Upon considering all of the factors set forth in Section 452.370 RSMo (1994), it is the finding of this Court that there has been a showing of changed circumstances so substantial and continuing as to make the terms of the Judgment and Decree of Dissolution of Marriage unreasonable as to spousal maintenance.

32. It is the finding of this Court that spousal maintenance should be terminated retroactive to September 1996, the first full month [mother] was employed.

\* \* \*

In her brief, mother informed us that Lexi died on March 26, 1997, and she: executed a contract for employment with the school district in May, 1997 for the 1997–1998 academic school year at a salary of $27,195.00; resumed teaching in August, 1997; and is currently employed. Mother is seeking maintenance from September, 1996 through July, 1997.

We initially note that father has filed a motion to dismiss mother's appeal, which was ordered taken with the case. Father contends that: (1) mother's statement of facts does not constitute a fair and concise statement of facts relevant to the question presented and therefore are violative of Rule 84.04(c); and (2) mother failed to file certain exhibits that were before the trial court. We have reviewed father's motion and the record on appeal and deny it.

In her point, mother contends that the trial court erred in terminating the maintenance obligation of father because the judgment is not supported by substantial evidence, is against the weight of the evidence, and erroneously declares and applies the law in that there was no showing of a change in circumstances so substantial and continuing as to make the terms of the prior decree unreasonable as the mother was only employed for two months before she took a leave of absence to care for the parties' seriously ill child.

Section 452.370.1 RSMo 1994 provides:

1. Except as otherwise provided in subsection 6 of section 452.325, the provisions of any decree respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. In a proceeding for modification of any child support or maintenance award, the court, in determining whether or not a substantial change in circumstances has occurred, shall consider

all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be shared by a spouse or other persons with whom he or she cohabits, and the earning capacity of a party who is not employed.

█ Changed circumstances sufficient to support modification must be proven by detailed evidence, which renders the original award unreasonable. *Vance v. Vance,* 852 S.W.2d 191, 193 (Mo.App.1993). The burden is on the movant to establish this fact. *Id.* Neither a decrease in one party's earnings nor an increase in the other party's earnings alone requires a modification. *Id.* The statutory standard of changed circumstances is designed to be strict so as to discourage recurrent and insubstantial motions for modification. *Lamont v. Lamont,* 922 S.W.2d 81, 85 (Mo.App.1996).

██ A spouse, if physically capable, has a duty to use reasonable efforts to become self supporting. *Beeler v. Beeler,* 820 S.W.2d 657, 661 (Mo.App.1991). A parent cannot shirk financial responsibilities by deliberately reducing his or her income from a substantial earning capacity to satisfy his or her own desires. *Butler v. Butler,* 562 S.W.2d 685, 687 (Mo.App.1977).

Here, father's first amended motion to modify, filed five days after Lexi's relapse, contended that the judgment and decree of dissolution: (1) provided that mother should receive maintenance only for approximately one year; or (2) at least recognized that two years of maintenance was sufficient enough support for mother. The trial court disagreed, finding no time limit placed on maintenance in the original decree. Our review of the decree indicates it did not place any time limits on maintenance.

Father's motion to modify also contended that mother failed to make a genuine, fair or reasonable attempt to find employment the first year after the dissolution or a genuine and good faith attempt to find employment in the local area. The trial court disagreed with father's contention, finding that "there was absolutely no evidence that [mother] had not diligently sought employment from the date of the dissolution until her recent employment with the Farmington School District." Our review of the record indicates no evidence that mother did not diligently seek employment since the dissolution.

Further, father's motion to modify contended that there was no good reason why father should be required to continue maintenance in light of mother's employment by the school district. The trial court found that it was in Lexi's best interests that someone be with her continuously when hospitalized and when convalescing and then evaluated mother's leave of absence in light of *Leslie v. Leslie,* 827 S.W.2d 180, 183[7] (Mo.banc 1992); *Bradley v. Bradley,* 880 S.W.2d 376 (Mo.App.1994) and *Hughes v. Hughes,* 761 S.W.2d 274, 276–77 (Mo.App.1988). In *Leslie,* our Supreme Court stated:

> Missouri courts have consistently held that a voluntary loss of employment is not a substantial and continuing change of circumstance such as to allow modification. *Hughes v. Hughes,* 761 S.W.2d 274, 277 (Mo.App.1988); *Overstreet v. Overstreet,* 693 S.W.2d 242, 245 (Mo.App.1985); *Foster v. Foster,* 537 S.W.2d 833, 836 (Mo.App. 1976). Even where retirement is induced by rumors of impending layoffs, courts have nonetheless found the loss of employment voluntary and, therefore, not a substantial and continuing circumstance that would allow modification. *Hughes,* 761 S.W.2d at 276; *Overstreet,* 693 S.W.2d at 245. Furthermore, in spite of a reduction in income as a consequence of retirement, the trial court may impute income to a spouse according to the spouse's ability to earn by using his or her best efforts to gain employment suitable to the spouse's capabilities. *Hughes,* 761 S.W.2d at 276; *Klinge v. Klinge,* 554 S.W.2d 474, 476 (Mo. App.1977).

Our review of *Leslie, Bradley* and *Hughes* reveals a central theme of a voluntary cessation of employment by a payor for the interest of the payor. Reviewing the trial court's findings of fact and conclusions of law, the trial court felt constrained by these cases and applied the principles espoused therein to the present situation. Here, it was undisputed that mother took a leave of absence solely because of the illness of her daughter, Lexi,

as so found by the trial court. While the principles espoused in *Leslie, Bradley* and *Hughes* are certainly alive and well, the trial court erroneously applied them in this case because the factual situation of this case is clearly distinguishable. As a result, a variant of the principles is applicable. Instead, we turn to cases involving reductions in payee's incomes.

In *Oldfield v. Oldfield,* 767 S.W.2d 134 (Mo.App.1989), the wife appealed from a judgment denying her motion to modify a decree of dissolution relating to child support and sustaining husband's motion to modify maintenance. At the modification hearing, the wife testified that the previous year she was working as a secretary earning $18,000 per year but quit her job in March because of poor health and to further her education. The husband testified that his income had declined due in large part to the decline in profits of the corporation where he was employed and in which he held forty-five percent of the stock. Imputing an income of $18,000 to the wife, the trial court reduced the husband's maintenance obligation from $2,000 per month to $500 per month, without making findings of fact or conclusions of law. On appeal, we found that the trial court may have believed wife voluntarily quit her employment in bad faith because there was evidence in the record that wife's "health problem" was a tennis elbow; her "education" consisted of a single night school course which she had been attending while she was employed; and she quit her job about two months from the date of the hearing on the motions to modify. *Oldfield,* 767 S.W.2d at 136[2–3].

In *Anderson v. Anderson,* 854 S.W.2d 32 (Mo.App.1993), the father appealed a trial court's order modifying a decree of dissolution by changing the child custody and ordering the father to pay the mother $497 per month in child support. In support of her motion to modify, mother testified that she switched from working nights as a waitress to working days as a waitress to accommodate her young daughter's needs. The change in mother's employment schedule resulted in a substantial reduction in her income as a result of previous night manager's wages and substantially larger tips at night.

On appeal, the father argued that the trial court should have imputed income to the mother due to her voluntary reduction in her income. In support, father cited *Devries v. Devries,* 804 S.W.2d 825 (Mo.App.1991), where a father voluntarily diminished his income and cashed in assets "without justifiable explanation." Responding, we stated:

> This case is distinguishable from *Devries.* The court in *Devries* determined that the appellant had reduced his income "without justifiable explanation." In this case, Mrs. Moss changed her work schedule to days from nights to better accommodate the changing needs of the parties' daughter. The trial court did not abuse its discretion. Substantial evidence supports the trial court's decision, and the court's decision is not against the weight of the evidence. *Anderson,* 854 S.W.2d at 37.

■ Father contends that *Anderson* is not relevant, arguing that such a child support case is wholly different than the present case involving maintenance. We disagree. The principles relative to reduction and imputation of a spouse's income in child support cases are equally applicable in modification of maintenance cases. *See Leslie,* 827 S.W.2d at 183[7], citing *Overstreet,* 693 S.W.2d at 245 and *Foster,* 537 S.W.2d at 836; *see also Hughes,* 761 S.W.2d at 276[5–6], citing *Overstreet,* 693 S.W.2d at 245. Thus, we find *Anderson* relevant.

A review of the record indicates that mother presented evidence of a "justifiable explanation" for her leave of absence, i.e. that Lexi's best interest would be served by someone being with her continuously when hospitalized and when convalescing at home. Additionally, a review of the decree of dissolution indicates that the trial court acknowledged that mother's future full-time employment, considering Lexi's medical condition, would be speculative. Pursuant to the rationale of *Oldfield* and *Anderson,* we find that the trial court erred in concluding that there has been a showing of changed circumstances so substantial and continuing as to make the terms of the judgment and decree of dissolution of marriage unreasonable as to maintenance. Since we have been informed that

Lexi is deceased, and mother is employed at the present time, we remand this matter to the trial court for findings consistent with this opinion.

REVERSED AND REMANDED

ROBERT G. DOWD, Jr., P.J., and HOFF, J., concur.