**Ronald Alvin MONNIG, Appellant,**

v.

**Roberta Jane MONNIG, Respondent.**

**No. WD 59113.**

Missouri Court of Appeals, Western District.

July 31, 2001.

Robert E. Harris, Warrensburg, for appellant.

Ronald R. Smull, Columbia, for respondent.

Before THOMAS H. NEWTON, Presiding Judge, JOSEPH M. ELLIS, and RONALD R. HOLLIGER, Judges.

ELLIS, Judge.

Ronald Alvin Monnig ("Husband") appeals from a judgment entered in the Circuit Court of Howard County modifying the amount of child support and maintenance he had previously been ordered to pay as a result of the dissolution of his marriage to Roberta Jane Monnig ("Wife").

Husband and Wife were married in June 1979. The couple had three daughters. Husband had a drinking problem that began when he was a teenager and continued through the course of the marriage.

On May 6, 1988, the Circuit Court of Howard County entered a Decree of Dissolution dissolving the marriage between Husband and Wife. At that time, Husband was employed as the vice-president in charge of production and quality control in his family's business, Monnig Industries, and had a salary of $88,000 per year. He also received dividend and rental income resulting in yearly income of between $100,000 and $128,000. Wife was not employed at the time of dissolution. Husband was ordered to pay $400 per month in child support for each of the three children and $500 per month in maintenance to Wife.

In May 1990, Husband's family asked him to leave the family business due to numerous absences and failure to perform his job duties. In conjunction with his departure from the family business, Husband elected to exercise a buy-out agreement for his share of the company. As a result of that agreement, Husband received a total of $310,000 in monthly payments paid out over the course of the next seven to eight years. Husband's child support and maintenance payments were paid directly by Monnig Industries to the clerk of the court, and a check for the remainder was issued to Husband.

In Spring 1991, Husband purchased a restaurant and bar which he operated for sixteen months until it failed. Prior to the restaurant failing, Husband remarried and had another daughter with his new wife. Husband's second marriage was dissolved in the Circuit Court of Jackson County in 1992. In that dissolution decree, Husband's second wife was given custody of their daughter, and Husband was ordered to pay child support.

In 1995, Husband sought treatment for various health problems. At that time, Husband was diagnosed with alcohol-related hepatitis and cirrhosis of the liver. Husband immediately quit drinking, but he had already sustained permanent, irreversible damage to his liver.

In spring 1996, Husband started a business out of his home which provided security system monitoring. By 1998, that business had failed. In 1998, Husband invested $40,000 to $60,000 to start a business providing internet access to custom-

ers. When that business failed, Husband was able to sell the dial-up portion of the business for $12,000, which was sufficient to cover the company's debts.

Husband received his last payment from Monnig Industries in June 1997. After those payments stopped, he sold his home and depleted money from a $40,000 trust fund to pay his living expenses and his child support and maintenance obligations.

In June 1998, Husband assumed custody of the daughter from his second marriage because his second wife had developed a drug and alcohol problem. Since then, Husband has not received any child support payments from his second wife.

On January 7, 2000, Husband filed a motion in the Circuit Court of Howard County to decrease or terminate his maintenance payments to Wife and to decrease his child support payments for their two children.

In spring 2000, Husband took a temporary job at Kays Engineering where he worked for approximately three weeks designing a web site for the company using a commercial software program. Husband worked 32 hours per week and was paid minimum wage ($5.15 per hour) for that work.

After his job at Kay Engineering was completed, Husband obtained another temporary, part-time job designing a web site for Worldwide Catfish Anglers Tournament Series, L.L.C. ("Worldwide Catfish"). He was also paid minimum wage for that job.

A hearing was conducted on Husband's motion on July 18, 2000. At the time of the hearing, the couple's oldest child was thirty years old and emancipated. The two other children were 16 and 17 years old.

On September 13, 2000, the circuit court entered its Judgment modifying the decree of dissolution. The trial court found that Husband had been diagnosed with cirrhosis of the liver in March 1995 and that his physical symptoms from that condition include periods of extreme fatigue which prevent him from performing full-time physical labor. The Court noted that Wife was currently employed and earning an average of $1,127 per month. The Court found that Husband "has not husbanded his assets, has squandered his assets, and has not invested his assets to produce income which could be used for the support of his children." The Court found that Husband was unable to work full-time, but concluded that based upon "his work experience, his education, and his apparent skill at computer programming," he was either underemployed or underpaid. Based on that finding, the Court imputed income of $1,500 per month to Husband. The Court denied Husband's motion to terminate maintenance, but reduced Husband's maintenance payments to Wife to $250 per month. Based on its own Form No. 14 calculations, the Court found that the proper amount of child support should be $423 per month. On appeal, Husband challenges the amount of maintenance and child support awarded in the Circuit Court's judgment.

In addressing challenges to maintenance and child support awards, "[w]e must sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Jones v. Jones,* 958 S.W.2d 607, 611 (Mo.App. W.D. 1998) (citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). " 'We afford the trial court deference with regard to its determinations of credibility and view the evidence in the light most favorable to its decision.' " *Haden v. Riou,* 37 S.W.3d 854, 860 (Mo.App. W.D.

2001) (quoting *Morton v. Myers*, 21 S.W.3d 99, 104 (Mo.App. W.D.2000)).

In his first point, Husband claims that the circuit court erred in imputing $1,500 per month in income to him in calculating his child support obligation under Form No. 14. Husband argues that no evidence was presented which would support the court's finding that he was capable of earning that amount and that the court's finding is against the weight of the evidence.

■ "We will set aside a judgment on the basis that it is against the weight of the evidence only with caution and with a firm belief that the trial court [sic] judgment is wrong." *Haden*, 37 S.W.3d at 860. "We will not substitute our judgments for that of the trial court absent a manifest abuse of discretion and will not disturb an award of child support unless the evidence is 'palpably insufficient' to support it.'" *Id.* (quoting *Thill v. Thill*, 26 S.W.3d 199, 207 (Mo.App. W.D.2000)).

■ "Where one of the parties is not employed or is underemployed, the trial court may attribute income to that party in the context of a Form No. 14 calculation depending on the factual circumstances."[1] *Jones*, 958 S.W.2d at 611. The instructions for Form No. 14 state:

When determining whether to include imputed income and, if so, the amount to include in a parent's "gross income," a court or administrative agency shall consider all relevant factors, including:

(1) the parent's probable earnings based on the parent's work history during the three years, or such time period as may be appropriate, immediately before the beginning of the

proceeding and during any other relevant time periods;

(2) the parent's occupational qualifications;

(3) the parent's employment potential;

(4) the available job opportunities in the community; and

(5) whether the parent is custodian of a child whose condition or circumstances make it appropriate that the parent not be required to seek employment outside the home.

*Comment H related to line 1 (Gross Income) in the Directions, Comments for Use and Examples for Completion of Form No. 14.*

■ "Form 14 permits a court in determining a spouse's potential income to 'consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, [and] prevailing job opportunities in the community.'" *Holmes v. Holmes*, 878 S.W.2d 906, 909 (Mo.App. E.D.1994) (quoting Form No. 14 "Directions for Completion of Form No. 14"). "The issue presented, when income is imputed to a party, is whether the evidence supports the amount of income imputed." *Honderick v. Honderick*, 984 S.W.2d 205, 212 (Mo.App. W.D.1999). "A parent must have the capacity to earn [the] income which is imputed to him or her." *Walker v. Walker*, 936 S.W.2d 244, 248 (Mo.App. S.D.1996).

■ As noted, *supra*, the trial court found that based upon "his work experience, his education, and his apparent skill at computer programming," Husband was either underemployed or underpaid. The

---

1. "'Proper circumstances' have been considered to include situations where a parent has voluntarily reduced his or her income without justification." *Walker v. Walker*, 936 S.W.2d 244, 247 (Mo.App. S.D.1996). "Also included are situations where a parent involuntarily lost a job but (1) failed to use his or her best efforts to obtain a new job; (2) refused to accept employment offers; or (3) failed to show that the unemployment was other than temporary." *Id.* at 247–48 (internal citations omitted).

court determined that Husband could make $1,500 per month working up to 32 hours per week and imputed that income to him in filling out its Form No. 14. This translates to a finding that Husband could obtain part-time employment paying at least $11.72 per hour. Husband claims that the evidence does not support a finding that he could make more than the $5.15 per hour that he received from Kays Engineering and Worldwide Catfish. In addressing Husband's claim of error, we must consider whether the record contains sufficient evidence to support the trial court's finding or whether that finding is against the weight of the evidence.

Wife did not present any evidence regarding Husband's work skills or earning potential. While Wife attributed $1,283.00 per month to Husband in filling out her Form No. 14, she did not present any evidence at trial to support that amount. Accordingly, the only evidence of Husband's employment potential came from his own evidence.

With regard to his work experience, Husband testified that while employed as the vice-president in charge of production and quality control at Monnig Industries, he basically served as a foreman on the shop floor of the galvanizing operation. Husband testified that ninety percent of his job involved physical work including lifting and operating machinery. He stated that most of the paperwork he performed merely involved the recording of weights. John Monnig, the general manager of Monnig Industries, testified that he and his secretary of fifteen years handled all of the office work at the factory and that all other employment there involves physical labor. Husband, his doctor, and John Monnig all testified that, given his physical condition, Husband would be unable to perform work similar to the position he had previously held at Monnig Industries.

Husband also had experience operating a bar/restaurant that failed under his management. He also ran businesses providing security monitoring and internet access, which likewise failed.

With regard to his education, Husband testified that he has a Bachelor of Arts in history from Columbia College. Husband stated that he had not found that degree to be very marketable.

As far as his "apparent skill at computer programming," the only evidence relating to Husband's skill with computing was his own testimony about setting up the web sites for Kays Engineering and Worldwide Catfish. Husband testified that he had sufficiently learned how to use a certain software program that he could set up web sites for companies using that program and that the work generally involved a lot of research and reading along with a little bit of typing.

With regard to his remuneration for the web site design work, Husband testified that both he and the companies he worked for got a "good deal" because he was able to obtain part-time employment with flexible hours and they were getting a web site at a "fairly reasonable cost." No evidence was presented indicating that similar employment was available at a greater rate of pay. Moreover, Husband testified that his current employment was temporary and that he had no job prospects after the Worldwide Catfish job ended. No evidence was presented of any other similar job possibilities in the area.

While the record supports a finding that Husband could work 32 hours per week and while Husband's testimony that Kay Engineering and Worldwide Catfish were getting a "good deal" might support a finding that he could earn more than mini-

mum wage for that type of work, the record does not contain any evidence from which the court could have reached its assigned wage rate. Even if the trial court did not view Husband's testimony as credible, no evidence was presented from which the court could have arrived at its amount of imputed income. The amount imputed to Husband by the court is over twice what he had been paid by Kay Engineering and Worldwide Catfish and even exceeded the unsupported amount asserted by Wife in her Form No. 14.[2]

The trial court expressly found the testimony of Husband and his doctor to be credible with regard to his inability to work full-time. The record does not contain any evidence of part-time jobs available in the area that Husband could perform or what type of wages he could obtain in such a position.[3]

Moreover, the trial court's finding that Husband had "computer programming" skills is tenuous at best. Testimony reflecting that an individual has the ability to use a particular software program does not necessarily support a finding that the individual has experience in "computer programming." Such a conclusion would render every administrative assistant with the ability to use a word-processing program a "computer programmer." Furthermore, the record does not contain any evidence related to the availability of part-time computer programming jobs in the community or the rate of pay for those jobs.

█ The trial court's assessment of the amount of income to impute to a party must be supported by the evidence, and the court is not allowed to set the amount of income solely based on speculation. *Hosack v. Hosack*, 973 S.W.2d 863, 871 (Mo.App. W.D.1998). While we are not unmindful of the unsatisfactory record confronting the trial judge as he attempted to arrive at a proper child support figure, based upon this record, we must find an abuse of discretion in setting the child support amount because the evidence was palpably insufficient in that regard. *See Walker*, 936 S.W.2d at 248 (holding that evidence that husband could "weld a little" and that jobs had been advertised in the area for welders paying $6.25 to $7.00 per hour did not support the imputation of more than husband's current wage of $5.50 per hour where the evidence did not establish that husband was qualified for those jobs or any other higher paying jobs available in the area); *See also In re Marriage of Garrison*, 846 S.W.2d 771, 776 (Mo.App. S.D.1993); *Hansen v. Phenicie*, 917 S.W.2d 618, 619 (Mo.App. E.D.1996); *Silverstein v. Silverstein*, 943 S.W.2d 300, 302 (Mo.App. E.D.1997).

Since we do not believe the record contains sufficient evidence from which to ascertain the proper income to be imputed to Husband, we must reverse and remand the cause to the trial court for additional proceedings on that issue.

In his second point, Husband contends the trial court's decision regarding maintenance was against the weight of the evidence. In making his claim, Husband asserts the trial court also improperly imputed $1,500.00 per month in income to him in making its maintenance award.

---

2. Wife did not present any evidence regarding Husband's income potential aside from attributing $1,283.00 per month to Husband on her Form No. 14. Wife did not present any evidence to support her use of that amount or any evidence related to Husbands earning potential.

3. Husband testified that his current position was temporary in nature and that he did not have any other prospective employment.

■ "The trial court is vested with broad discretion as to the issue of maintenance and is accorded great deference." *Jordan v. Jordan,* 984 S.W.2d 878, 882 (Mo.App. W.D.1999). "On appeal, we limit our review of such an award to determine if the court has abused its discretion." *Holmes,* 878 S.W.2d at 910.

■ "In determining the amount of maintenance, the trial court must balance the reasonable needs of the spouse seeking maintenance against the other spouse's ability to pay." *Griffin v. Griffin,* 986 S.W.2d 534, 538 (Mo.App. W.D.1999). In making this determination, "[a] court can impute income to a spouse seeking maintenance 'according to what he or she could earn by use of his or her best efforts to gain employment suitable to his or her capabilities.'" *Hosack,* 973 S.W.2d at 871 (quoting *Schroeder v. Schroeder,* 924 S.W.2d 22, 27 (Mo.App. E.D.1996)). "The principles relative to reduction and imputation of a spouse's income in child support cases are equally applicable in modification of maintenance cases." *Ramsey v. Ramsey,* 965 S.W.2d 365, 372 (Mo.App. E.D. 1998).

While the judgment does not expressly state that the trial court imputed income to Husband in awarding maintenance, it appears that the trial court may indeed have done so. As noted, *supra,* the trial court's imputation of $1,500.00 per month in income to Husband was not supported by the evidence. In any event, since the matter must be remanded for the trial court to re-examine the imputation of income in its calculation of child support, the trial court will also be afforded a chance to reassess its maintenance award at that time.

Because the issues raised in Husband's third point may arise again on remand, in the interest of judicial economy, we will briefly address them at this time. In his third point, Husband claims that the trial court improperly failed to follow the proper instructions in filling out its own Form No. 14. He contends the court improperly failed to adjust Wife's gross income to include the maintenance ordered by the court, failed to adjust his gross income to reflect the maintenance payments, failed to adjust his income to reflect his support obligation for his other daughter, and failed to apply any visitation credit in filling out its Form No. 14. Husband also claims that the court improperly calculated the credit for Wife's health insurance costs.

■ "When determining the amount of child support to be paid, the application of Rule 88.01 and Form 14 is mandatory." *Spradling v. Spradling,* 959 S.W.2d 908, 913 (Mo.App. S.D.1998). The proper Form No. 14 amount must be calculated in conformity with the Supreme Court's directions for its use. *In re Marriage of Bloom,* 926 S.W.2d 512, 518 (Mo.App. S.D. 1996).

■ Husband first claims the court erred in failing to increase Wife's gross income by the amount of ordered maintenance and failing to include those payments as an adjustment to his gross income. The Directions for calculating "Gross Income" for purposes of Form No. 14 state that "maintenance actually received" shall be included in calculating those amounts. Comment A of the Form No. 14 Directions related to Line 2b states, "If the court is establishing both child support and maintenance; the court shall first determine the appropriate amount of maintenance. This amount shall be included in the gross income (line 1) of the parent receiving the maintenance and as an adjustment (line 2b) of the parent paying the maintenance."

The trial court did not follow these instructions in filling out its Form No. 14 in this case. On remand, if the court enters an award of maintenance, the proper adjustments should be included in its Form No. 14 calculations.

■■■ Husband next claims that the trial court improperly failed to adjust his gross income on Line 2c of Form No. 14 to reflect his support obligation for the child of his second marriage. Line 2c provides for an adjustment to the gross income for other children who are not part of the current proceeding for which a party has primary physical custody, however, the instructions for Line 2c provide that:

> [T]he adjustment available to the moving parent in an action to increase or decrease the support payable under the existing order shall be the lesser of: (1) the adjustment to which that parent was entitled for the particular child on line 2a or 2c when the existing order was entered, or (2) the adjustment to which that parent is entitled for the particular child on line 2c as a result of an order in another action entered after the existing order.

Since Husband was the moving party, he was not entitled to any adjustment for the child of his second marriage at the time the original support order was entered, as that child was not born at that time. Accordingly, the option (1) adjustment under the instructions is zero. Thus, because the adjustment is limited to the lesser of the two options, Husband cannot be entitled to an adjustment on his motion to modify his support obligation.

■■■ Husband also claims that the court failed to include an adjustment to his child support obligation for visitation on Line 11 of Form No. 14.[4] Under the directions for that adjustment, Husband would be entitled to a nine-percent adjustment based upon the amount of visitation assigned to him if Wife's adjusted gross income exceeds $1,350.00 per month. The directions also give the court discretion to apply the adjustment if Husband's gross income minus the presumed child support amount is less than $1,350.00 per month. As previously noted, the trial court improperly calculated the gross income of Wife and the adjusted gross income of Husband in filling out its Form No. 14 by failing to adjust those amounts for the ordered maintenance. Had Wife's gross income been properly calculated, her adjusted gross income would have exceeded $1,350.00 per month and mandated a visitation adjustment on Line 11. Depending upon whether income is imputed to Husband and whether Wife is awarded maintenance, such a visitation adjustment may or may not be applicable on remand.

Finally, Husband claims the trial court improperly calculated Wife's health insurance costs for the children in filling out its Form No. 14. In filling out line 6c for Wife, the trial court credited her with paying $87.00 per month in insurance costs for the children.

Under the directions for Line 6c related to health insurance:

> If the amount of the actual health insurance premium for the children who are the subject of this proceeding is not available or cannot be verified, the

---

4. Line 11 provides an adjustment for a portion of the amounts expended by the parent obligated to pay support during periods of overnight visitation or custody. The adjustment is calculated by multiplying the basic child support amount by the applicable adjustment from the table provided. The parenting plan adopted by the court gives Father 80 days of visitation or 22% of the year. According to the applicable table, a 9% adjustment would apply.

amount of the premium attributable to the children who are the subject of this proceeding shall be calculated by dividing the total monthly premium for the policy of health insurance by the total number of persons for whom the premium is paid or to be paid and then multiplying the resulting figure by the number of children insured under the policy who are subject of this proceeding.

At trial, Wife testified that she paid $29.04 per week for insurance for her and the two children. That amount translates to $125.84 per month.[5] Dividing that amount by the three people covered and then multiplying it times two for the children, the resulting figure is $83.89. Rounding to the nearest dollar for purposes of Form No. 14, the trial court should have credited Wife with $84.00 in health insurance costs rather than $87.00. Accordingly, the trial court erred in its calculation.

Because the amount of income imputed to Husband by the trial court is not supported by the evidence, the judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion. On remand, the proper instructions should be followed in establishing the presumed amount of child support under Form No. 14.

All concur.

---

5. $29.04 X 52 = $1,510.08 / 12 = $125.84.