**Stephen Joel PAYNE,**
**Petitioner/Appellant,**

v.

**Phyllis Ann PAYNE,**
**Respondent/Cross–**
**Appellant.**

**No. ED 87674.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 21, 2006.

381

Bruce Francis Hilton, Kirkwood, MO, for appellant.

Joanne Martin Descher, Clayton, MO, for respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

Stephen Joel Payne (Husband) appeals from the judgment of the trial court modifying the judgment of dissolution of his marriage to Phyllis Ann Payne (Wife). We reverse and remand.[1]

*Background*

The marriage of Husband and Wife was dissolved by a judgment of dissolution entered in September 2004. As pertinent to the issues on appeal, the judgment: 1) awarded the parties joint legal and physical custody of their three minor children, with Wife being designated as the residential parent for educational purposes; 2) ordered Husband to pay to Wife $1500 per month as periodic maintenance; and 3) ordered Husband to pay to Wife $1488 per month for the support of the three children, $1242 for the support of two children, and $810 when only one child remained eligible for support. In this judgment, the trial court found Husband's gross earnings to be $11,733 per month, comprised of a monthly base salary of $8400 and an average annual bonus of $40,000. The trial court determined that Wife was capable of obtaining full-time employment as a registered nurse and imputed a monthly income of $3200 to Wife.

On January 4, 2005, Husband filed a Motion to Modify Judgment of Dissolution as It Relates to Custody, Maintenance, and Child Support (Motion), alleging changes in the parties' circumstances which rendered the judgment unreasonable as it related to maintenance and child support. The alleged changes included: 1) Husband's previous employment as an oil trad-

---

1. Respondent's motion for dismissal of appeal is denied.

er was terminated involuntarily; 2) no marketable jobs in the oil trading industry were available; 3) Husband would not be receiving a year-end bonus due to his termination; 4) Husband did not have sufficient income or assets with which to support himself and continue to contribute to the support of Wife and their minor children as ordered; 5) Wife, upon returning to the work force as a registered nurse, had sufficient income, assets, and resources to meet her reasonable needs; 6) Wife had taken up residence with an unrelated male and it was not in the best interests of the minor children to continue to primarily reside with Wife; and 7) a minor child had expressed his desire to reside primarily with Husband. In his Motion, Husband asked for an order terminating his maintenance obligations to Wife retroactive to the date the motion was served, or alternatively, reducing his obligation to a fair and reasonable amount retroactive to the date of service; determining a reasonable amount as and for child support retroactive to the date of service; and transferring the primary care, custody and control of the minor children from Wife to Husband; together with such further orders as the court deemed just and proper.

A hearing on Husband's Motion was conducted on September 13, 2005. Both parties appeared and were represented by counsel. Wife testified that she was currently employed as a dealer at Harrah's for 24 hours per week and also had worked part-time for H & R Block for three-and-one-half months. She testified that her average net monthly income, including maintenance, was approximately $4600. Wife asked the court to use the figure it imputed her as income in the original judgment as her present income.

Wife testified that the man who lives with her (Boyfriend) gives her approximately $50 per week to contribute toward food. According to her Amended Statement of Income and Expenses, Wife's mortgage payment is $1518 per month, her utilities run $311 per month, and she spends $490 per month for gas, oil, maintenance, taxes, and licenses for her automobiles.

Boyfriend also testified. He stated he also works twenty-four hours per week as a dealer at Harrah's, making approximately $19 per hour. He confirmed that he pays Wife approximately $50 per week for food and necessities, including gas money for Wife to drive him to work. He does not pay rent or contribute money for utilities.

Husband testified that he was involuntarily terminated by his employer, Apex Oil Company, in September of 2004. In accordance with his severance package, Husband received four payments of $4019.57 in October and November 2004, and a lump sum payment of $32,156.56 in December 2004. Approximately $7900 of these funds were garnished by Wife for unpaid maintenance and to satisfy other unpaid obligations under the parties' original dissolution judgment.

Since his termination, Husband has talked to contacts in Europe and mailed resumes to every major oil company in the United States. He has asked friends who work with the oil companies to pass on his resume and has made phone calls to business associates and head hunters. He remains unemployed, but has attempted to establish an antique business where he rents booths in malls to sell items.

Both parties presented expert testimony regarding Husband's employability. Husband's expert opined that opportunities for employment in Husband's prior occupation as a buyer in the petroleum industry did not exist in the St. Louis metropolitan area. He stated that the bulk of positions

in Husband's field were found in California, New York, and Louisiana. Husband's expert concluded that, in the St. Louis labor market, Husband was employable as an accountant, purchasing agent, buyer, logistic specialist, sales representative, or secondary schoolteacher and estimated his probable earning capacity at approximately $38,959 annually.

In his testimony concerning Husband's employability, Wife's expert opined that Husband was employable as an oil trader or an accountant. Wife's expert stated that a survey he conducted of the labor market revealed that the average yearly salary was $89,166 for oil traders. He stated that salaries for accountants ranged between $38,500 and $52,000 and that the average salary for the accounting position for which Husband currently would be qualified was $43,714. Although he was unable to locate any oil trader positions in the St. Louis metropolitan area, Wife's expert did find an oil trader position in Warrenville, Illinois, which is a Chicago suburb. He also located oil trader positions in Houston, New York, and Fort Wayne. In a Vocational Evaluation Report submitted as an exhibit, Wife's expert indicated that Husband had been networking, searching the internet for oil trader vacancies in the St. Louis and Chicago areas, and had sent out resumes. Wife's expert noted that Husband had not been cold-calling employers and characterized Husband's job search as limited.

The court-appointed guardian ad litem (GAL) for the parties' minor daughter (Daughter) also testified. Based on Daughter's age (14), her bond with Husband, and the frequency that Daughter saw Husband, the GAL opined that it would not be in Daughter's best interest for Husband to relocate.

In its Modification Judgment, the trial court noted that the custody disputes were resolved prior to trial with the assistance of the GAL and stated that the parenting plan entered as part of the original dissolution judgment would remain in effect, amended only to prohibit Boyfriend's transportation of Daughter. The trial court found no change in circumstances as to Wife's income. Although the trial court found that Wife resided with an adult who shared or reasonably could be expected to share household expenses, it determined that, because Boyfriend was not employed full-time, his contribution was minimal, approximately $50–75 per week.

The trial court further found that Husband had been discharged from his employment on September 30, 2004, and remained unemployed, although Husband had generated limited income from an antique business. The trial court pointed to the experts' testimony that Husband would have the highest earning potential if he were to become reemployed in the oil trading business and characterized the key difference of their opinions as being whether Husband should be expected to relocate from the St. Louis area to obtain such work. It recounted the family's history of Husband traveling internationally for work and Wife taking the children to Wisconsin for extended summer vacations and opined that "long gaps in Husband's time with the children are not atypical." The trial court acknowledged the GAL's opinion that it was not in the best interests of the parties' youngest child that Husband so relocate, but concluded that, in light of Husband's obligation to use all reasonable efforts to find employment following his discharge, it was "in the best interests of the whole family that Husband do whatever is necessary including possible relocation to maximize his ability to contribute to the support of all members of the family." Accordingly, the trial court imputed income to Husband in the amount

of $7430 per month. The trial court reduced Husband's maintenance obligation to $750 per month and his child support obligation for two children to $600 per month. It declined to make the modification retroactive to the date of service, instead finding that consideration of the relative financial circumstances of the parties made it appropriate for the modification to become effective December 1, 2005.

On December 13, 2005, Husband filed a Motion for a New Trial, or in the Alternative, to Amend Judgment, which was denied on February 6, 2006. This appeal follows.

### Points on Appeal

Husband raises three points on appeal, claiming the trial court erred: 1) in imputing to Husband $7430 per month in income and applying a "best interest of the whole family" standard which would necessitate Husband's relocation; 2) in failing to terminate maintenance because Wife does not maximize her own resources to satisfy her needs, in that Wife does not require Boyfriend to contribute to expenses and Wife has failed to seek full-time employment; and 3) in failing to award Husband retroactive child support and maintenance relief.

### Standard of Review

Our review of a trial court's judgment modifying a dissolution decree is limited to determining whether the judgment is supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Smith v. Smith*, 969 S.W.2d 856, 858 (Mo. App. E.D.1998).

### Discussion

In his first point, Husband claims the trial court erred in imputing to him $7430 per month in income because the trial court applied a "best interest of the whole family" standard necessitating Husband's relocation instead of considering the facts pertaining to jobs available in the community. He further asserts that the evidence did not substantially support the trial court's finding that there had been "long gaps" in Husband's visitation with Daughter which justified Husband's need to relocate. Finally, Husband maintains that the trial court's conclusion that it was in the whole family's best interests that Husband do whatever necessary, including relocating, to maximize his ability to contribute support was "unreasonable under the circumstances in that the parenting plan the trial court found to be in the best interest of the child requires Husband to reside in the St. Louis area."

"The principles relative to reduction and imputation of a spouse's income in child support cases are equally applicable in modification of maintenance cases." *Monnig v. Monnig*, 53 S.W.3d 241, 248 (Mo.App. W.D.2001), *quoting Ramsey v. Ramsey*, 965 S.W.2d 365, 372 (Mo.App. E.D.1998). Trial courts have discretion to impute income to an underemployed or unemployed parent when calculating child support awards. *Smith v. Smith*, 969 S.W.2d 856, 858 (Mo.App. E.D.1998). In order to discourage parents from deliberately limiting their work to reduce income and thus evade responsibility to their families, courts may, in proper circumstances, impute income to such parents according to what the parents could earn by use of their best efforts to gain employment suitable to their abilities. *Id.* at 858–59. Thus, courts impute income in situations where spouses lose their jobs involuntarily, but do not in good faith attempt to obtain new employment. *Silverstein v. Silverstein*, 943 S.W.2d 300, 302 (Mo.App. E.D. 1997) (absent evidence by the father contradicting the mother's testimony that she

sought employment by contacting head-hunters, sending out resumes, and making phone calls, the trial court's imputation of a $48,000 annual salary to the mother was not supported by substantial evidence). What constitutes the appropriate circumstances to impute income is fact-dependent and must be determined case-by-case. *Smith,* 969 S.W.2d at 859.

Here, Husband's uncontradicted testimony was that he had talked to contacts in Europe, mailed resumes to every major oil company in the United States, asked friends who work with the oil companies to pass on his resume, and made phone calls to business associates and head hunters, but remained unemployed. Despite Husband's lack of success in obtaining employment, both experts stated that Husband was definitely employable.

As for Husband's opportunities, Husband's expert opined that Husband would be employable in various positions that would be available in the area, such as an accountant, sales representative, or secondary school teacher, with a probable earning capacity of approximately $38,959 annually. Wife's expert opined that Husband would be employable as an oil trader at an annual salary of approximately $89,166 or an accountant at an annual salary of approximately $43,714. However, both parties' experts testified that they had been unable to locate an oil trader position, other than with the company that terminated Husband, within the St. Louis area. Nevertheless, the trial court imputed a monthly salary of $7430 to Husband, based on Wife's expert's testimony that his survey revealed an average yearly salary of $89,166 for oil traders.

■ Although we agree that the circumstances before us are appropriate for imputing income to Husband, our review indicates the court's conclusion that it was in the best interest of the whole family that

Husband do whatever was necessary, including relocating to another state, to maximize his ability to contribute to the support of all members of his family was not supported by the evidence. On the contrary, the GAL opined that it would not be in the youngest child's best interest for Husband to move away.

■ Furthermore, courts do not interfere to compel spouses to obtain employment which will generate the maximum possible income to support their children or to mandate what employment a spouse should be required to obtain. *Id.* Significantly, in listing the relevant factors courts must consider when determining the amount to impute to a parent as income, Comment H to Form 14 (the presumed child support amount calculation worksheet) includes the "available job opportunities **in the community**" (emphasis ours). The relevant community in this case would be the area where Husband and the children are living: therefore, the job opportunities considered for purposes of imputing income should be those available within a reasonable distance of the St. Louis metropolitan area. *Buchholz v. Buchholz,* 166 S.W.3d 146, 154 (Mo.App. S.D.2005).

The trial court erred in imputing to Husband $7430 per month. *Monnig,* 53 S.W.3d at 247 (trial court's assessment of the amount of income to impute to a party must be supported by the evidence). Point granted.

■ In his second point, Husband claims the trial court erred and abused its discretion when it failed to terminate his maintenance obligation because Wife fails to maximize her own resources to satisfy her needs. He asserts that as Wife does not require Boyfriend to contribute to her mortgage and utility payments and has failed to seek full-time employment since their divorce, continuing Husband's main-

tenance obligation is against the weight of the evidence.

█ Regarding proceedings for modification of child support or maintenance awards, Section 452.370 RSMo 2004 provides that when determining whether a substantial change in circumstances has occurred, the court shall consider all financial resources of the parties, "including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or the person with whom he or she cohabits." Thus, the extent to which household expenses are shared with a cohabitant is relevant in determining whether a change in circumstances has occurred. *Gal v. Gal,* 937 S.W.2d 391, 394 (Mo.App. E.D.1997). Consequently, Boyfriend's income correctly would be included in the court's consideration of her financial resources and the extent to which he shares or should share Wife's expenses. *Id.*

In its Modification Judgment, the trial court acknowledged that Wife resided with an adult who shared or could reasonably be expected to share household expenses and stated that it had considered the evidence concerning the contribution to the household made by Wife's live-in boyfriend. The court further stated that, because Boyfriend worked only part-time, his contribution was minimal, only $50–75 per week. The trial court did impute income of $3200 monthly to Wife, as it did in the original dissolution judgment, and noted there was no evidence presented during the modification proceeding that she had the ability to earn more than that amount.

According to Boyfriend's testimony, he earns approximately $1824 per month working part-time, yet generally contributes only $200 monthly toward Wife's expenses. He lives with Wife rent-free and she drives him where he needs or wants to go. The court correctly noted that Boyfriend's contribution was minimal; although reasonable minds might differ as to whether Boyfriend could be expected to share household expenses beyond reimbursing Wife $50 for "his share" of the food and gas, we cannot conclude the trial court abused its discretion in finding no substantial change of circumstances in Wife's financial resources and needs. Point denied.

█ In his third point, Husband claims the trial court erred when it failed to award him retroactive child support and maintenance relief because Local Rule 68.9 creates a presumption for retroactive relief when child support is modified and this presumption was not rebutted at trial. Husband further argues that the evidence of Husband's financial circumstances makes retroactive maintenance relief appropriate because Husband had been unemployed for one year and had substantially depleted the marital property he was awarded.

Local Rule 68.9 provides, in pertinent part:

(1) In all proceedings to modify any provision for support of a minor child or children in a decree of dissolution or order of paternity, there shall exist a presumption that any modification (increase or decrease) of the obligation for payment of support for a minor child shall be retroactive to the date of filing of movant's statement of income and expenses or the date of service of movant's motion to modify, whichever shall occur later.

█ The effective date for modification of a child support award, subsequent to the filing of a motion to modify, is a matter within the trial court's discretion. *McMickle v. McMickle,* 862 S.W.2d 477, 485 (Mo.App. W.D.1993). We will not disturb the trial court's determination absent a clear abuse of that discretion. *Id.* Hus-

band is an educated, highly qualified individual with impressive job experience. As such, he was quite capable of generating more income than the minimal amount he received from his antique sales. Nevertheless, Husband remained unemployed for over a year, a choice which resulted in the depletion of the considerable assets he was awarded in the dissolution proceedings. Accordingly, we find that the trial court did not clearly abuse its discretion in declining to award retroactive relief. Point denied.

### Conclusion

The judgment of the trial court is reversed and remanded for proceedings in accordance with this opinion. The trial court shall re-determine the amount of income to impute to Husband and then can determine the appropriate amount of support as adjusted by any reasonable approach justified by the evidence.

ROY L. RICHTER, P.J., and KATHIANNE KNAUP CRANE, J. concur.