Wendy Kay WUELLING, and, I.E.B., a minor, by his next friend, Wendy Kay Wuelling, Respondent,

v.

Timothy BROWN, Appellant.

No. ED 95218.

Missouri Court of Appeals, Eastern District, Division Three.

April 26, 2011.

Newton G. McCoy, St. Louis, MO, for appellant.

Cynthia Howlett, Clayton, MO, for respondent.

## OPINION

CLIFFORD H. AHRENS, Judge.

Timothy Brown (Father) appeals the Amended Family Court Order, Judgment and Decree of Paternity entered after trial. Father contends that the trial court erred by imputing a gross monthly income of $5,679 in calculating his child support obligation using Form 14. We reverse and remand.

### BACKGROUND

Father and Wendy Wuelling (Mother) began living together in 2001. Their son, I.E.B. (Son) was born in October 2006. Father moved out of the family home in 2008. Son continued to live with Mother. Since the separation, Father has maintained an active relationship with Son. He takes Son to daycare every day. Son has had approximately fifteen overnight visits with Father.

Father holds a mechanical engineering degree from the University of Missouri–Rolla. In January 2009, Father involuntarily lost his job at Ambitech Engineering, where he earned $65,400 in 2007 and $79,031 in 2008. Father was one of approximately 100 employees laid off due to the economic recession. Following his discharge, Father began working part-time at the Home Depot for $9.00 per hour.

At trial, Father testified that he has been looking for jobs since the day he was laid off. To make himself more marketable, he taught himself to use a new software program. He received a $60,000 job offer in Atlanta but turned it down "so I could stay close to my son." He testified that he sent out approximately 100–150 resumes and went on a few interviews. He also produced a variety of rejection letters from his job search. Neither party presented expert testimony regarding Father's marketability or the St. Louis job market. Mother presented no evidence relevant to the imputation of income to father.

Both parties submitted a proposed Form 14. Mother stated Father's monthly gross income as $5,729. Father stated his income as $5,517 (based on his previous earnings as an engineer), but his Statement of Income and Expenses indicated a then-current monthly income of $1,229 consistent with his employment at Home Depot. In its order, the family court imputed Father's gross monthly income as $5,679. Subsequently, Father made a motion for a new trial or amended judgment and was granted leave to submit a new Form 14, which listed his income as $3,333. The family court retained its original imputation of $5,679 and entered an amended judgment containing only slight modifications from its original judgment. Father appeals, asserting that the trial court erred by imputing his income at $5,679.

### STANDARD OF REVIEW

We review a non-jury case under Rule 73.01(c). The trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against

the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Neal v. Neal*, 281 S.W.3d 330, 337 (Mo. App. E.D.2009). We defer to the trial court's determinations of credibility and view the evidence and inferences that may be drawn therefrom in the light most favorable to the judgment. *Neal*, 281 S.W.3d at 337. Questions of law are matters reserved for de novo review by the appellate court, and we therefore give no deference to the trial court's judgment in such matters. *H & B Masonry Co., Inc. v. Davis*, 32 S.W.3d 120, 124 (Mo.App.2000).

## DISCUSSION

■ Father asserts two sub-points: (1) that the trial court erred as a matter of law by penalizing him for declining a job offer in Atlanta and (2) that the evidence does not support the court's finding that Father failed to use his best efforts to obtain local employment.

■ In proper circumstances, a trial court may impute income to a party according to what that party could earn by using best efforts to gain employment suitable to his or her capabilities. *Krepps v. Krepps*, 234 S.W.3d 605, 612 (Mo.App. W.D.2007). Imputation is only proper where the trial court concludes from the evidence that the "parent has the capacity to earn more but voluntarily refuses to do so." *Id.* Courts impute income in situations where a person loses his job involuntarily but does not in good faith attempt to gain new employment. *Silverstein v. Silverstein*, 943 S.W.2d 300, 302 (Mo.App. 1997). What constitutes the appropriate circumstances to impute income is fact-dependent and must be determined case-by-case. *Smith v. Smith*, 969 S.W.2d, 856, 859 (Mo.App.1998).

In support of his position that the trial court improperly considered the Atlanta job offer, Father relies on *Payne v. Payne*, 206 S.W.3d 379 (Mo.App. E.D.2006). There, the trial court imputed income to the father based on national job market data despite expert witnesses' consensus on the absence of local positions (other than with the company that terminated him). This court reversed, reasoning that "courts do not interfere to compel spouses to obtain employment which will generate the maximum possible income." *Id.* at 385. Rather, the court referred to Comment H to Form 14 directing courts to consider "available opportunities *in the community*."[1] *Id.* (emphasis in original) Here, the trial court found as follows:

> Father admitted that it is not unusual for engineers to obtain employment outside the State of Missouri but did not sufficiently explain why he failed to do so. Evidently, Father understood that he had to seek employment outside of the St. Louis Metropolitan area for work in his field of education and training, and that limiting his search to the St. Louis area may not be his "best efforts" in obtaining employment. Had Father accepted the Atlanta employment offer,

1. Comment H to Form 14 lists five factors that the court must consider when imputing income: the parent's (1) probable earnings based recent work history; (2) occupational qualifications; (3) employment potential; (4) the available job opportunities in the community; and (5) whether circumstances make it necessary that the custodial parent not seek employment outside the home. Directions, Comments for Use and Examples for Completion of Form No. 14, Line 1: Gross Income. Factors 1 through 3 and 5 are not at issue here. Respondent argues that factors 1–3 supported the trial court's imputation and simply outweighed factor 4. This makes no sense. A person can be highly qualified and have excellent earning potential, but those factors are irrelevant if there are no jobs available in the community.

his annual gross income would have been at least in the "low 60s."

To the extent that the trial court relied on the Atlanta offer in its assessment of best efforts and salary expectation, *Payne* compels us to conclude that the court erred.[2]

■ We are left, then, with the question of whether the court's imputation of income to Father is supported by the evidence regarding Father's local job search. Father testified that he sent out 100–150 resumes, both within and without his specific area of engineering expertise and many for less pay, and that he went on several interviews and was in contact with a few headhunters. He also adduced several rejection letters from potential local employers—a sample from dozens of such letters, he testified. Mother offered no rebuttal evidence on this issue, and, unlike *Payne*, neither party adduced expert testimony as to appropriate prospects for Father in the St. Louis market. The trial court's judgment simply states, without elaboration, that it "[did] not find any credible evidence regarding Father's part-time employment and Father's efforts to secure employment." We are constrained to defer to the trial court's determinations of credibility, view of the evidence, and inferences therefrom. *Neal*, 281 S.W.3d at 337. Thus, disregarding Father's testimony regarding his job search efforts, as we must, the remaining record contains nothing more than a handful of rejection letters evidencing Father's unsuccessful efforts to secure employment in his field. Mother offered no rebuttal evidence suggesting that positions suitable to Father's qualifications were available in the community or that Father had failed to make a good faith effort to secure such a position. Ample Missouri precedent prescribes reversal on similar facts. *See Silverstein*, 943 S.W.2d at 302 (imputation not supported by substantial evidence where mother testified about job search and father offered no evidence to the contrary); *Hansen v. Phenicie*, 917 S.W.2d 618 (Mo.App.1996) (imputation not supported by the evidence where mother testified about looking for work and father offered no evidence that she had not attempted to find employment or that employment was available); *Buchholz v. Buchholz*, 166 S.W.3d 146 (Mo.App. 2005) (despite trial court's finding that father's testimony lacked credibility, imputation not supported where mother presented no evidence that father had failed to make good faith efforts to find better employment or that such employment was available; and *Baker v. Baker*, 60 S.W.3d 19 (Mo.App.2001) (proof that parent previously made more money is not alone a sufficient basis to impute income)).

*Payne* and the foregoing cases instruct that the imputation of income to Father is only appropriate if the evidence substantiates that Father has failed to make a good faith effort to obtain employment despite the demonstrated availability of suitable positions in the community. Furthermore, "a parent must have the capacity to earn income which is imputed to him or her, and an award of child support must be supported by evidence of the parent's ability to pay." *Buchholz*, 166 S.W.3d at 153. Missouri precedent compels us to conclude that the record before us does not constitute substantial evidence to support the trial court's imputation of $5,679 in monthly income to Father. Point granted.

## CONCLUSION

The trial court's judgment is reversed and the case is remanded for further pro-

---

2. Moreover, trial court's expectation that Father seek employment far outside the St. Louis metro area is inconsistent with the parties' parenting plan and with public policy, which favor frequent, continuing, and meaningful contact with both parents. RSMo § 452.375.4 (2000).

ceedings consistent with this opinion.[3] The trial court may take additional evidence to determine the amount of income actually earned by Father or properly imputable to him if warranted under Missouri precedent and supported by the evidence presented.

SHERRI B. SULLIVAN, P.J., and LAWRENCE E. MOONEY, J., concur.

---

**3.** Respondent's motion to dismiss, taken with the case, is denied.