**Vivian L. DONOVAN, Respondent,**

v.

**Doyle D. DONOVAN, Appellant.**

**No. WD 65515.**

Missouri Court of Appeals,
Western District.

May 23, 2006.

---

Michael Wesley Hanna, Raytown, for Appellant.

Carrie E. Martsching, Kansas City, for Respondent.

RONALD R. HOLLIGER, Judge.

Dolye Donovan ("Husband") appeals the trial court's judgment and decree of dissolution of his marriage to Vivian Donovan ("Wife"). Husband raises three points on appeal, two dealing with the award of maintenance and one with apportionment of marital debt. In his first point, Husband contends the trial court abused its discretion in awarding Wife $500 per month in maintenance because the award is not supported by substantial evidence, is against the weight of the evidence, and is an erroneous application of the law. Point two claims that the trial court erroneously declared or misapplied the law in ordering that Wife's maintenance begin one month prior to the date the court's decree of dissolution was entered. Finally, Point three claims the trial court's award of one half of a credit card debt to Husband is not supported by substantial evidence, is against the weight of the evidence, and constitutes an abuse of discretion.

We affirm.

## Factual and Procedural Background

Husband and Wife were married on June 16, 1979. Two minor children were born of the marriage, Eric D. Donovan and Amy M. Donovan. Husband has been employed by the Kansas City, Missouri, Fire Department since 1977. Wife worked in a hotel up until January 1988 and remained out of the work force until January of 2000. During that time, Wife was a homemaker and home-schooled her son through sixth grade and her daughter through fourth grade. When the children entered the public school system, Wife reentered the work force taking a job as an office manager for a rock quarry where she worked from January of 2000 to April of 2000. In April of 2000, Wife took a new job at the Jackson County Courthouse working in the garnishments section. Wife left this job in January of 2004 because she was having trouble doing and concentrating on her work due to the turmoil her children were going through, the condition of her home, and back pain from injuries she sustained in a car accident in 1982.

On November 19, 2003, Wife filed a petition for dissolution of marriage against Husband. Husband filed an answer and counter petition and Wife filed a reply to Husband's counter petition. After hearing, the trial court entered its judgment and decree of dissolution of marriage on April 20, 2005. The trial court divided the marital property and marital debt and awarded Wife $721 per month in child

support and $500 per month in maintenance.

## Standard of Review

The trial court's order will be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Comninellis v. Comninellis*, 147 S.W.3d 102, 105–06 (Mo.App. W.D.2004). This court will review the evidence in the light most favorable to the dissolution decree, disregarding contrary evidence, and defers to the trial court even if the evidence could support a different conclusion. *Id.* at 106.

## Discussion

### I. Maintenance

In a dissolution proceeding, a court may award maintenance to a spouse if it finds that the spouse: (1) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; and (2) is unable to support herself through appropriate employment. Section 452.335.1. The spouse seeking maintenance has the burden of establishing these threshold requirements. *Comninellis*, 147 S.W.3d at 106. If these threshold requirements are met, the trial court shall award maintenance in an amount and for a period of time as the court deems just after considering the following relevant factors: (1) the financial resources of the party seeking maintenance; (2) time necessary to acquire sufficient education or training to find appropriate employment; (3) the comparative earning capacity of each spouse; (4) the standard of living during the marriage; (5) obligations and assets of each party; (6) duration of the marriage; (7) age and physical and emotional condition of the spouse seeking maintenance; (8) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; (9) conduct of the parties during the marriage; and (10) any other relevant factors. Section 452.335.2.

■■■ The trial court made no specific findings and none were requested regarding its award of maintenance other than that Wife "lacks sufficient property, including martial property apportioned to her herein, to provide for her reasonable needs and that [Wife] is unable to support herself through appropriate employment." In the absence of findings, we review to see whether, resolving all inferences in favor of the trial court's ruling, there was substantial evidence to support the trial court's decision. *Taylor v. Taylor*, 12 S.W.3d 340, 346 (Mo.App. W.D.2000). The trial court's award of maintenance is reviewed only for an abuse of discretion. *Comninellis*, 147 S.W.3d at 106.

Husband concedes that Wife's reasonable needs exceed the investment income derived from the marital property apportioned to her. However, Husband argues that there is no substantial and competent evidence that Wife is unable to support herself through appropriate employment. Husband relies on *In re Marriage of Liljedahl*, 942 S.W.2d 919 (Mo.App. S.D. 1997), in arguing that Wife did not present sufficient evidence that she is unable to support herself through appropriate employment due to her back pain. In *Liljedahl*, the Southern District found that the trial court's finding that wife was unable to support herself through appropriate employment due to her present mental condition was not supported by substantial evidence and reversed the trial court's judgment awarding wife maintenance. 942 S.W.2d at 920–21. The Southern District based its holding on the fact that the wife admitted she quit going to work based on her husband's advice and wife presented no medical evidence, other than

her conclusory testimony, of symptoms that limited or precluded her from engaging in employment. *Id.* at 925.

Unlike *Liljedahl,* Wife here presented substantial evidence that she is unable to support herself through appropriate employment due to her medical condition. At trial, Wife testified that she believed that she could hold a part-time job but not a full-time job. Subsequent to filing a petition for dissolution of marriage, Wife was employed full-time at the Jackson County Courthouse. Wife testified that she left that job in January of 2004 because she was having trouble concentrating on her work and doing it correctly because of the turmoil her children were experiencing and her unfinished home. She further testified that she was having trouble sitting at the computer all day long because of previous back surgery. Wife was in a car accident in 1982 that ruptured two discs in her lower back and required two surgeries. Although the court had ordered a special chair for her to sit on, she was still having trouble with her back and would have to go in the back office to lie down on the floor before continuing work. Wife also testified that while she was working she was taking pain medication four times a day, but only had to take pain medication once a day when she was working on her house because she was able to rest her back and then get up when she felt better.

■ Wife also admitted into evidence medical records from her doctors, Dr. Maeda and Dr. Ball, chronicling Wife's two back surgeries, one in March of 1996 and the other in August of 2002, and the regular prescription of pain medication. Husband testified at trial that his Wife frequently complained that she was hurting when she came home from her job at the courthouse and that he would frequently go and get her medication at the pharmacy

for her when she was in pain. In addition to the evidence presented at trial regarding Wife's medical condition, Wife testified that she was out of the work force from January of 1988 to January of 2000 when she was raising and home-schooling her children. It is well established that a wife's withdrawal from the job market to be a homemaker is a sound basis for awarding maintenance. *Comninellis,* 147 S.W.3d at 110. It is clear from the record that Wife presented substantial evidence that she is unable to support herself through appropriate employment. The trial court did not abuse its discretion in awarding Wife maintenance.

■ In a subpart of point one Husband also argues that the trial court's imputation of $1,000 in income to Wife on its Form 14 is not supported by substantial evidence, is against the weight of the evidence, and is an erroneous application of the law. Husband is incorrect in his assertion that the trial court erred in its application of the law because in making a maintenance determination, the trial court may impute income to a spouse according to what she could earn by use of her best efforts to gain employment suitable to her capabilities. *McCallum v. McCallum,* 184 S.W.3d 169, 172 (Mo.App. E.D.2006). This court may look at the trial court's Form 14 child support calculations to determine the reasonableness of the trial court's findings with respect to maintenance. *In re Marriage of Neu,* 167 S.W.3d 791, 796–97 (Mo. App. E.D.2005). "Absent an evidentiary or legal basis for treating the calculations differently, a trial court may not treat imputation of income on its Form 14 child support calculations in a different manner than in its maintenance calculations." *Id.* at 797.

■ Husband's complaint is somewhat unclear. It does not appear that he is complaining about the Form 14 calculation

or the award of child support. Rather we understand his argument to be that there is no evidence to support the amount of the imputed income and that, therefore, the court should have imputed the amount she made in her last employment (approximately $1,900 per month) or the amount she was making at trial ($0). We disagree. The trial court could have based its calculation on half time work at her former rate or imputed amount or minimum wage work that her health would permit. There need not be specific evidence to support the exact amount of imputed income. In 2003, Wife worked full-time and her income was $22,830.08. The trial court's imputation of $1,000 properly reflects what Wife could earn using her best efforts to gain part-time employment. The trial court did not err in its imputation of income to Wife.

## II. Retroactivity

 In its judgment awarding maintenance to Wife, the trial court ordered that the first payment be due on March 15, 2005. Husband argues that the trial court erroneously declared or applied the law in ordering that the first maintenance payment be due on March 15, 2005, because the trial court did not enter its Judgment and Decree of Dissolution of Marriage until April 20, 2005. It is well established that section 452.335 speaks prospectively, not retrospectively. *Cohen v. Cohen*, 178 S.W.3d 656, 670 (Mo.App. W.D.2005). A

maintenance award cannot be made retroactive. *Id.* This court has described a prohibited retroactive maintenance award as "an award of maintenance from the date of the trial court's *initial* judgment *backwards* to another point in time." *Id.* An exception exists, however, where a motion for temporary maintenance has been filed. An award of maintenance at the time of final judgment can be ordered to begin on the date the pendente lite motion is filed. *Colquitt v. Muhammad*, 86 S.W.3d 144, 149 (Mo.App.E.D.2002). A pendente lite motion was filed on March 4, 2004, over a year prior to the date of judgment. The court could have awarded maintenance retroactive to that date. Instead the court awarded only one month of retroactive maintenance because of its debt distribution discussed below.[1] The court did not err.

## III. Debt

 In his final point on appeal, Husband argues that the trial court erred in awarding to him and ordering him to pay one-half of the $13,000 Visa Starbuck debt because there is no evidence or insufficient evidence of the existence of this debt at the time of trial. The trial court is to divide marital property and martial debts "in such proportions as the court deems just." Section 452.330.1. Marital debt is debt acquired subsequent to commencement of the marriage. *Travis v. Travis*, 163 S.W.3d 43, 48 (Mo.App. W.D.

---

1. Wife complains that the trial court's judgment and order for Husband to begin his maintenance payments on March 15, 2005, should be reversed and made retroactive to the date of filing her motion for temporary maintenance on March 4, 2004. Missouri law is clear that in the absence of a cross appeal, this court is concerned only with the complaint of the party appealing; an opposing party who did not file an appeal is not permitted to complain of any portion of the trial court's judgment adverse to her. *Dun-*

*ham v. Estate of Hamilton*, 718 S.W.2d 152, 153 (Mo.App. W.D.1986). However, a respondent may attack the erroneous rulings of the trial court to sustain a judgment in its favor. *Brockman v. Regency Fin. Corp.*, 124 S.W.3d 43, 50 (Mo.App. W.D.2004). In this case, Wife did not file a cross appeal, nor is she attacking an erroneous ruling of the trial court to sustain a judgment in her favor. Therefore, this court will not consider Wife's argument.

2005). The trial court has broad discretion in dividing martial debt, and the appellate court will not disturb its division absent an abuse of discretion. *Id.* at 48–49. We will defer to the trial court's division of martial debts even if the evidence could support a different conclusion. *Id.* at 49.

Here the trial court found that "due to the non-retroactivity of the [Husband's] maintenance and child support obligations" it is "fair, reasonable and not unconscionable" that Husband should pay "one-half of the Visa Starbuck in the total amount of $13,000." At trial, Wife asked the trial court to award retroactive maintenance and child support back to the time she filed her petition for dissolution because during the parties' separation Husband had not paid Wife any money to meet her reasonable needs and had paid very little in child support directly to Wife. Wife testified that she had incurred $12,000 on a credit card while the dissolution was pending. The credit card was also used to purchase a new computer for her son.

██ On cross-examination, Wife further testified that the credit card that she had charged $12,000 was not listed on her amended statement of marital and non-marital assets and debts. Despite Wife's testimony, her statement lists a Visa with a $6,000 balance. This statement was prepared on October 14, 2004, almost five months before trial. At trial, Husband did not contest the existence of this debt. In fact, Husband acknowledged the existence of the credit card when he testified he knew how much she had paid for the new computer because the credit card company kept billing him asking him why he had not paid for it. Based on the testimony at trial, we find that there was sufficient evidence that the $13,000 Visa Starbuck debt existed at the time of trial and the trial court did not abuse its discretion in ordering Husband to pay one-half of the debt.

## Conclusion

The trial court did not err in awarding Wife $500 per month in modifiable maintenance or in awarding Husband to pay one-half of the $13,000 Visa Starbuck debt. The trial court's determination that Husband's maintenance payments begin on March 15, 2005, was not erroneous. The judgment is affirmed.

PATRICIA A. BRECKENRIDGE, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.