Sharlene KREPPS, Appellant–
Respondent,

v.

Richard Lee KREPPS, Respondent–
Appellant.

Nos. WD 66750, WD 66772.

Missouri Court of Appeals,
Western District.

Sept. 18, 2007.

Dennis J. Owens, Kansas City, MO, for Appellant–Respondent.

Les D. Wight, II, Independence, MO, for Respondent–Appellant.

Before LOWENSTEIN, P.J., ELLIS and HARDWICK, JJ.

HAROLD L. LOWENSTEIN, Judge.

Sharlene Krepps ("Wife") appeals a judgment and decree of dissolution claiming error associated with the trial court's award of custody of minor children, the award of maintenance and child support, the division of marital property, and the award of attorneys' fees. Richard Krepps ("Husband") cross-appeals the award of child support and maintenance. Wife's motions to dismiss Husband's cross appeal and to compel Husband to pay one-half the cost of the transcript were taken with the case.

## I. FACTS

Husband and Wife were married in 1992. Both spouses worked as engineers. After the birth of their first child, Wife, then earning $65,000 per year as an engineer, became a stay-at-home mother. The couple decided that Wife would raise their daughter, Alexis, and Husband would work toward his professional engineer's license. They agreed to later switch roles so that Wife could work toward her license and Husband would care for the child. However, two years later a second child, Brock, was born. Brock was diagnosed at an early age with Asberger's Syndrome, a form of high-functioning autism. Wife never returned to her career. At the time of the dissolution, Alexis was ten years old and Brock was eight years old.

Husband was employed by Aquila as an engineer at a contract rate of $79,000 per year.[1] Until the separation, he evinced little interest in the children. Wife was the caregiver for the children, seeking care and treatment for Brock and managing the children's school and recreational activities. Wife instituted a gluten-free and casein-free diet, nutritional supplements, and therapy to allow Brock to function more normally. Wife stopped taking Brock to his local pediatrician and instead sought treatment, via webcam, from a homeopath doctor licensed in Wisconsin.[2] At the time of the dissolution, Brock had been mainstreamed into his class at his local elementary school.

---

1. The contract rate of pay does not reflect bonuses, incentive pay, or the value of employer-provided benefits.

2. The homeopathic doctor was not licensed to practice in Missouri.

In November 2003, Wife left the marital home and moved with the children into a condominium her parents had purchased. The condominium was located near the marital home so the children remained in the same school. Husband and Wife agreed the children should continue to attend that school rather than change to the school associated with Wife's address. Husband had limited access to the children during the separation.

In October 2004, Wife filed for dissolution. Her proposed parenting plan provided for joint legal custody but she asked for the bulk of the parenting time. She requested child support, maintenance, and attorneys' fees. She wanted final authority over major decisions for the children, especially as to Brock's treatment. Husband filed a counterpetition and proposed an alternate parenting plan.

In March 2005, the couple agreed on a temporary custody schedule pending the disposition of their dissolution. The children lived with Wife, and Husband had the children Wednesday evenings and every other weekend. Wife required that Husband agree to continue Brock's special diet and nutritional supplements. Husband agreed to maintain the diet but did not agree to follow the supplement regimen.

Wife did not obtain full-time employment until a year and a half after the November 2003 separation. Husband had been encouraging Wife to find employment in her previous career as an engineer and had been sending her notices of job openings, but Wife was reluctant and did not actively pursue a position as an engineer. She worked part-time in retail clothing sales for a short time but spent more on clothes than she earned in income. Wife began to look for full-time employment in May of 2005. She secured full-time employment in June 2005 selling nutritional supplements, earning $31,200 per year.

## II. PROCEDURAL POSTURE

### A. EVIDENCE AT TRIAL

At trial, Wife asked for primary physical custody of the children. She asked that the holidays be divided between the parents. She asked that Husband be ordered to follow Wife's instructions regarding the supplement and diet regimen. Wife wanted final decisions as to the children, including medical decisions.

Husband asked for joint physical and legal custody on an alternate week schedule. He claimed the supplements were unnecessary but was willing to continue the gluten-free and casein-free diet. Husband was also concerned that Wife was not taking the children to their local pediatrician but, rather, they were seeing, via webcam, a homeopath not licensed in Missouri. Husband asked that the court order that the children discontinue their treatments with the homeopath and return to their pediatrician. He asked that major decisions for the children be made jointly between the parents.

Wife presented the court with a great deal of evidence about the benefits to Brock of the supplements, special diet, and therapy. The children's former pediatrician testified that the diet and supplements were not proven beneficial, but there was no evidence that they caused harm, either. The trial court indicated great skepticism about Wife's supplement program and the children's treatment by an out-of-state homeopath. The trial court, in its findings, questioned the credibility of both parents.

Husband argued that Wife was underemployed in retail sales and could make significantly more in income as an engineer. He testified that he had forwarded her a number of open positions with Aquila upon which she refused to follow up. He

also questioned her job search and her contention that, because she had been out of the workforce for nine years, she was not able to find a chemical engineering position. He presented evidence that an inexperienced chemical engineer or chemist could earn between $40,000 and $60,000.

## B. TRIAL COURT'S JUDGMENT

The judgment of dissolution granted the parents joint physical and legal custody of the children. The court ordered that the parents alternate custody from week to week and designated Husband's address as the mailing address of the children. The trial court found that there was no credible scientific evidence as to the medical value of the supplement treatments but, likewise, there was no evidence that the supplements were harmful. The court ordered that Husband need not provide the supplements but ordered that the gluten-free, casein-free diet be continued. Treatments by the homeopath were to be discontinued and the children returned to the care of their local pediatrician.

The court found, further, that Wife was underemployed and that she did not diligently seek employment in the career for which she was best qualified. The court found that Wife could make $48,000 per year as an engineer. The trial court rejected the Form 14's proffered by both spouses and created its own, inputting $4,000 as Wife's monthly gross income, and $7,900 as Husband's monthly gross income.

The court awarded the marital home to Husband, the balance to be split evenly. Wife received marital assets valued at $184,699[3] and was allocated $829 of marital debt. Husband received marital assets

valued at $285,002 and was allocated $75,565 of the marital debt.

The judgment found that the presumed correct child support amount per the trial court's own Form 14 was $547 per month and ordered Husband to pay child support in that amount. Husband was ordered to pay Wife $300 monthly maintenance and $7,500 in attorneys' fees.

In her first point on appeal, Wife contests the trial court's custody determination. In her second point she claims the trial court erred in imputing income of $4,000 per month to her. In points three and four she contests the division of marital property claiming the trial court improperly considered Husband's contribution of nonmarital property to the purchase of the marital home and the trial court failed to properly consider her substantial individual debts in reaching its division of property. In her fifth point she claims the trial court's award of attorneys' fees was inadequate. In her sixth point, she asks this court to remand the judgment for the trial court to correct a mathematical error in the judgment.

Husband brings two points on cross-appeal. He first claims that the figure the trial court input as Husband's gross income in its Form 14 was incorrect. He next claims that the trial court erred in awarding maintenance to Wife.

## III. DISCUSSION

 This court reviews a court-tried civil case under the standard established by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The trial court's judgment must be supported by substantial evidence, and must not be against the weight of the

---

**3.** The trial court's mathematical error in the calculation of the marital property awarded

to wife is discussed *infra*.

evidence, and must not erroneously declare or apply the law. *Id.* at 32. Evidence is viewed in a light most favorable to the judgment, giving deference to the trial court's credibility determinations. *Griffith v. Griffith,* 163 S.W.3d 464, 465 (Mo.App. 2005). "In reviewing the record on appeal, this Court accepts as true the evidence and inferences therefrom that are favorable to the trial court's decree and ... disregard[s] all contrary evidence." *In re the Marriage of Turner,* 5 S.W.3d 607, 609 (Mo.App.1999). This court presumes the trial court's judgment is correct. *Humphrey v. Sisk,* 890 S.W.2d 18, 20 (Mo.App. 1994). Accordingly, the party asserting error has the burden to demonstrate the incorrectness of the decree. *Id.*

### A. WIFE'S APPEAL

#### 1. CHILD CUSTODY

 Wife claims that the trial court's parenting plan granting each parent equal parenting time is against the weight of the evidence and not in the best interests of the children. Wife argues that she has been the sole caregiver and Husband did not evince any interest in the children until the separation. Wife claims that as she was the primary caregiver during the marriage, she should have been awarded the majority of the parenting time.

 The trial court is afforded greater deference in child custody determinations than in other cases. *In re Marriage of Sisk,* 937 S.W.2d 727, 730 (Mo.App. 1996). Accordingly, this court presumes the trial court's award of custody is in the child's best interest. *Id.* Because the trial court is in a superior position to judge the credibility and sincerity of the witnesses, this court "may not substitute its judgment for that of the trial court so long as there is credible evidence upon which the trial court can formulate its beliefs." *In re Marriage of Patroske,* 888 S.W.2d 374, 384

(Mo.App.1994). Accordingly, "an appellate court will not disturb a trial court's custody award unless it is manifestly erroneous and the welfare of the child requires some disposition other than that made by the trial court." *In re Marriage of V.A.E.,* 873 S.W.2d 262, 266 (Mo.App.1994). Wife bears a heavy burden in seeking to overturn the custody determination of the trial court. *Aston v. Aston,* 810 S.W.2d 720, 721 (Mo.App.1991).

Wife argues that where one parent was the caregiver during the marriage, the trial court acts against the child's best interests if it awards each parent equal parenting time. Despite her claim that such is the clear precedent in Missouri, Wife fails to provide any legal support for such a contention. Rather, she cites to cases where one party was the primary caregiver and the appellate court *affirmed* the trial court's grant of more parenting time to that party. Here, Wife asks this court to reverse the trial court's award of equal parenting time and remand for some other disposition of custody. However, she provides no basis upon which this court could conclude that the trial court's grant of custody was an abuse of discretion.

Wife does not demonstrate that the best interests of the children demand that she be awarded a greater share of parenting time. Wife simply reiterates the same evidence she presented to the trial court. Indeed, this court does not dispute Wife acted as the caregiver and was admirably devoted to the welfare of her children. However, the trial court correctly noted that it was mindful of, but not bound by, the division of labor when the family was intact. The trial court determined that it was in the children's best interests that Wife and Husband share equally in the parenting time. Wife does not point to any legal authority or evidence in the record that would demonstrate that the trial

court's decision was manifestly erroneous or not in the best interests of the children.

"The record in the instant case does not require the conclusion that the trial court's ruling concerning custody was against the logic of the circumstances then before it and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration, the benchmark of an abuse of discretion." *Patroske*, 888 S.W.2d at 384. Wife's first point is denied.

### 2. IMPUTED INCOME

■ Wife next claims that the income imputed to her in the trial court's Form 14 was incorrect. Wife testified that she then earned $31,200 per year selling nutritional supplements. In its judgment, the trial court found that Wife did not diligently seek employment and failed to look for work in the field for which she was most qualified. Based on those findings, the trial court imputed yearly income of $48,000 to Wife in calculating the court's Form 14. Wife now claims that the trial court's imputation of income was in error.[4]

■ In proper circumstances, a trial court may impute income to a party according to what that party could earn by using best efforts to gain employment suitable to his or her capabilities. *Jensen v. Jensen*, 877 S.W.2d 131, 136 (Mo.App. 1994). Imputation is appropriate where the parent voluntarily reduces his or her income without justification. *Nelson v. Nelson*, 195 S.W.3d 502, 511 (Mo.App. 2006). Imputation is only proper where the trial court concludes from the evidence that the "parent has the capacity to earn more but voluntarily refuses to do so." *Walker v. Walker*, 936 S.W.2d 244, 247

(Mo.App.1996). In imputing income, the directions to Form 14 indicate that the court may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, prevailing job opportunities in the community. Directions, Comments for Use and Examples for Completion of Form No. 14, Line 1: Gross Income.

Wife testified at trial that she had a degree in chemical engineering and had worked for six years as a chemical engineer earning between $50,000 and $65,000 per year before she left her employment to become a full-time homemaker and parent. Despite her degree and her previous work experience, she stated that she no longer wished to work as a chemical engineer. She claimed that she had no reason to go back to being a chemical engineer but instead "would like to still resume [her] activities as much as [she] can as a stay at home mom." She claimed that because she had children and had been a stay-at-home mom, she no longer desired to work as an engineer. When asked about her qualifications as an engineer she stated: "What I can do and what I want to do are two different things."

Wife claimed that she attempted to find an engineering position. She testified that she called a number of companies about possible opportunities but only followed up with a few applications. She did not register with employment agencies or seek the assistance of placement professionals. Wife concluded from her limited job search that companies would not hire an engineer who had been out of the workforce for eight years.

---

**4.** In her Point Relied On, Wife seems to argue that the trial court misapplied the law in imputing any income but then, in the argument section, seems to argue that the imputed amount was not supported by or was against the overwhelming weight of the evidence in the record.

However, Dennis Greashaber, Husband's supervisor at Aquila, testified that engineering, at least with regard to power plants, was "one of those industries that is . . . very steady. If you know your basics, your basics will still apply now whether you have a . . . blank in your employment time. If you knew your basics ten years ago, you still know your basics now." The trial court could conclude from the evidence that Wife's search for a position well-suited to her qualifications was, at best, informal and, at worst, pro forma, and that, given a more diligent job search, Wife could reasonably obtain a position as a chemical engineer or chemist.

The trial court's apparent conclusion that Wife could, but chose not to, return to a career as a chemical engineer or a chemist, earning a more substantial salary than provided by her job selling retail supplements, is supported in the record. The trial court could also have concluded from the evidence that Wife had not used her best efforts to obtain a position as a chemical engineer but had merely gone through the motions in seeking such a position.

Wife relies on *Smith v. Smith*, 969 S.W.2d 856 (Mo.App.1998), in claiming that "the trial court should not have imputed income to Mrs. Krepps based upon an engineer's salary when she is no longer qualified for an engineering job and is gainfully employed [selling supplements.]" The facts of *Smith*, however, do not support Wife's argument. In *Smith*, the father, to whom the court imputed income, was on leave without pay from his position with the Postal Service and was suffering from Crohn's disease. *Id.* at 858. In order to return to work and earn the amount the trial court imputed, the father would have had to have surgery and wear a colostomy bag. *Id.* The court concluded that the amount imputed was beyond the father's capacity to earn as father was not

"required to undergo a serious and invasive surgical procedure in order to maximize his earnings." *Id.* at 859. Here, Wife suffers no such disability preventing her from returning to her career and earning the amount the trial court imputed.

Where the trial court imputes income, the sum imputed must be within that individual's capacity to earn. *Id.* Here, witness Greashaber testified a starting engineer with no practical experience could earn $40,000 to $60,000. He also testified that a chemist's compensation ranged between $44,000 and $57,000. Despite Wife's claim that she was a chemical engineer and, therefore, could not, or would not, work as a chemist, Greashaber stated that "a chemical engineer could fill that position," although a chemical engineer would enjoy greater opportunity for advancement. The court's conclusion that Wife could earn $48,000 per year is supported in the record.

Unlike the father in *Smith*, Wife is not under a physical disability that would prevent her return to chemical engineering. Nor, given her pro forma employment search, can Wife demonstrate the absence of jobs in her field or that she would have to relocate to obtain such employment. *See Payne v. Payne*, 206 S.W.3d 379, 385 (Mo.App.2006). Wife may suffer some career disability given the eight-year absence from her field, however, the trial court seems to consider her absence from the workplace in that the income it imputed income was consistent with that of a beginning, inexperienced engineer.

The trial court concluded that Wife was not prevented from finding work as a chemist or a chemical engineer—employment for which she is best suited—but, rather, for other reasons, chose not to seek such a position. Wife has the capacity to earn the amount of income the trial court imputed to her, and the trial court did not

err in imputing income of $48,000 per year. This point is denied.

### 3. DIVISION OF PROPERTY

In her next two points, Wife challenges the trial court's division of marital property. She first argues that the trial court erred in finding that husband had contributed $30,000.00 of nonmarital property to the purchase of the marital home. She then challenges the division of marital property, claiming that the trial court did not consider her economic circumstances and substantial post-separation debt in rendering its decision.

■■■ The trial court has broad discretion in dividing marital property. *Selby v. Selby*, 149 S.W.3d 472, 482 (Mo.App. 2004). "This discretion is abused only if the ruling is clearly against the logic of the circumstances and so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration." *Id.* The trial court is not required to make an equal division of property, just an equitable one. *Turner*, 5 S.W.3d at 612. This court presumes that the "trial court's division is correct and the party challenging it bears the burden of overcoming that presumption." *Replogle v. Replogle*, 903 S.W.2d 551, 556 (Mo.App. 1995). "This court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *In re Marriage of Chorum*, 959 S.W.2d 900, 905 (Mo.App.1997).

Wife first contends that the trial court found that $30,000 of the value of the marital home was Husband's nonmarital property. This claim mischaracterizes the trial court's finding. The trial court stated: "The uncontroverted evidence is that [Husband] put $30,000 of non-marital assets into the marital residence. This fact has been factored into the Court's division of assets."

■■■ The evidence that Husband contributed $30,000 in nonmarital property as the down payment on the marital home was, as the trial court noted, uncontroverted. Husband testified that he had accumulated $30,000 prior to the marriage and used that money for the down payment. Wife was asked: "Did [Husband] have nonmarital property to the tune of $30,000 that was used to purchase your marital home?" She replied: "Along with some money I had, yes." Thus, Wife admitted that Husband had applied $30,000 in nonmarital funds to the purchase of the home. Although, Wife correctly notes that the Husband's nonmarital contribution was transmuted into marital property, "[t]ransmutation of separate property into marital property will not preclude the trial court from considering the premarital contribution in dividing the marital property." *Gremaud v. Gremaud*, 860 S.W.2d 354, 357 (Mo.App.1993).

■■■ Moreover, the judgment does not reflect that trial court set aside $30,000 of the value of the marital home as Husband's nonmarital property, as Wife claims. The trial court did not state that it was making any offset. Rather, the trial court property considered the Husband's nonmarital contribution to the purchase of the marital home in dividing the marital property. Section 452.330.1(2).[5] Thus,

**5.** Section 452.330.1 guides the trial court's division of property and provides that, in dividing marital property, the court must consider:

(1) The economic circumstances of each spouse at the time the division of the property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable peri-

Wife mischaracterizes the evidence in the record and the trial court's finding. Point denied.

Wife next claims that the trial court "failed to consider [her] substantial individual debts and how those debts significantly impacted her economic circumstances." In so doing, she argues, the trial court failed to properly consider her economic circumstances at the time of division, as required by Section 452.330.1(1). Therefore, she contends, the division of property was inequitable.

The trial court awarded Husband marital property, including the marital home, with a value of $285,002 and ordered him to be responsible for liabilities totaling $75,585 for a net award of $209,437. Wife was awarded marital property with a net value of $184,699 [6] and ordered her to be responsible for liabilities totaling $829 for a net award of $183,870. Wife submitted evidence of $63,985.76 in individual liabilities, the bulk of which $61,050.76, were associated with the dissolution litigation.[7]

■ The court awarded to wife 46.74% of the net marital property and 53.26% of the net marital property to Husband. However, "the fact that one party is awarded a higher percentage of marital assets is not a per se abuse of

discretion." *Gremaud,* 860 S.W.2d at 356. Wife would have this court view the trial court's division of marital assets in light of her substantial individual debts, including her attorneys' fees and litigation expenses, incurred after the separation. She claims that division of marital assets was inequitable and an abuse of discretion in that, once her individual debt is subtracted from the award, the award is heavily skewed in Husband's favor.

■ Wife's argument rests on her assumption that the trial court did not meaningfully consider her individual debt in rendering its judgment. However, she fails to support this assumption with citations to the law or evidence in the record. She is correct in that a trial court may consider attorneys' fees incurred by a spouse in a dissolution as an element of the economic circumstances of that spouse. *Stratman v. Stratman,* 948 S.W.2d 230, 235 (Mo.App.1997). However, the case law Wife cites in support of her argument are cases wherein the trial court's specific consideration of attorneys' fees in dividing the marital assets was challenged, and upheld, upon appeal. Moreover, Wife cites to nothing in the record to indicate the trial court did not consider her individual debt as alleged. As no specific findings were requested, this court presumes the trial

---

ods to the spouse having custody of any children;
(2) The contribution of each spouse to the acquisition of the marital property, including the contributions of a spouse as homemaker;
(3) The value of nonmarital property set apart to each spouse;
(4) The conduct of the parties during the marriage; and
(5) Custodial arrangements for minor children.

**6.** As discussed *infra,* the trial court erred in entering a value of $187,879 when the individual values of the property add up to $184,699.

**7.** Wife proffered Exhibit 21 that indicated Wife had expenses related to litigation of $50,015.25 including: (1) debts to family members for payment of attorneys' fees of $10,700; (2) attorneys' fees to Berkowitz and Cook of $32,590; and (3) other litigation expenses $3,790.25. However, Wife's Exhibit 52 indicated that Wife had incurred $46,560.51 in attorneys' fees with Berkowitz and Cook. The record is unclear whether Wife had incurred $13,970.51 in additional attorneys' fees between the dates of the two exhibits or whether Exhibit 52 reflects the total attorneys' fees and Exhibit 21 reflects the balance due.

court entered its judgment in accordance with considerations of Section 452.330.1 *Hosack v. Hosack,* 973 S.W.2d 863, 868 (Mo.App.1998). Wife not does overcome the presumption that the trial court considered all the factors of Section 452.330.1 and that the judgment is correct. Point denied.

### 4. ATTORNEYS' FEES

In her next point, Wife asserts the award of attorneys' fees was not reasonable. She claims that the trial court could not have considered the parties' relative financial circumstances in ordering Husband to pay $7,500 of her $46,000 in attorneys' fees. Given the magnitude of the attorneys' fees she has incurred and Husband's more substantial income, she argues that a reasonable award would have been substantially more than that of the trial court.

"An award of attorney fees is solely within the sound discretion of the trial court." *Scott v. Scott,* 144 S.W.3d 921, 922 (Mo.App.2004). The trial court is considered an expert as to the necessity, reasonableness, and value of attorneys' fees and thus, the trial court's decision is presumptively correct. *Copeland v. Copeland,* 116 S.W.3d 726, 729 (Mo.App.2003). An award of attorneys' fees is only reviewable for an abuse of discretion. *Id.* "We will only disturb the trial court's decision to award attorney fees if the amount awarded was so arbitrary or unreasonable as to indicate indifference and a lack of proper consideration by the trial court." *In re Marriage of Lindeman,* 140 S.W.3d 266, 279 (Mo.App.2004).

Section 452.355 permits, but does not require, the trial court to make an award of attorneys' fees. In so doing, the trial court is to consider all relevant factors including, the relative financial resources of the parties, the merits of the

case, and the actions of the parties during the pendency of the action. Section 452.355. Although Wife rests her argument on the relative disparity of the parties' incomes, the trial court's consideration in awarding attorneys' fees "is not limited to solely the financial resources of the parties." *Sola v. Bidwell,* 980 S.W.2d 60, 66 (Mo.App.1998).

Wife argues that the award was insufficient given the magnitude of the attorneys' fees she incurred. Husband points out that Wife incurred significant attorneys' fees in litigating Husband's reluctance to abide by her regimen of supplements prescribed for Brock by the out-of-state homeopath. Indeed, the trial court viewed the efficacy of such treatments with great skepticism. In awarding attorneys' fees, the trial court "may consider what principal issues necessitated the expenditure of fees and who raised and developed those issues." *Morse v. Morse,* 80 S.W.3d 898, 907 (Mo.App.2002). Here, the trial court was free to consider that Wife had expended considerable resources on the issue of the supplements.

Because the trial court did not make, and neither party requested, findings of fact as to the award of attorneys' fees, this court presumes the trial court considered the factors of Section 452.355 in making its decision. The record does not indicate otherwise. Wife's argument is inadequate to overcome the presumption that the trial court's award was correct. Point denied.

### 5. MATHEMATICAL ERROR IN CALCULATION OF MARITAL PROPERTY

Wife next claims the trial court made a mathematical error in calculating her portion of the marital property resulting in an $3,180 overstatement. This court finds a mathematical error occurred in the

court's calculation in the value of Wife's marital property in that the judgment stated Wife was awarded $187,879 when the actual amount reflected by the itemized values was $184,699.

Under Rule 84.14, this court may "give such judgment as the court ought to give." Accordingly, this court modifies the trial court's amended judgment to correct the mathematical error in the calculation of the total of Wife's portion of the marital property. The Judgment and Decree of Dissolution dated March 3, 2006, should read that Wife received items of marital property as her sole and separate property valued at $184,699.

### 6. WIFE'S MOTION TO DISMISS CROSS-APPEAL

This court first addresses Wife's motion to dismiss Husband's cross-appeal. Wife argues Husband cannot challenge the award of maintenance and child support as he made arguments in his answer to Wife's motion for reconsideration that these awards were proper and that these statements are directly contrary to his arguments on appeal. Wife mischaracterizes Husband's statements. In his answer to the motion for reconsideration, Husband responded to each of Wife's specific claims in separate paragraphs. In her motion to dismiss the appeal, Wife lifted statements made in response to specific claims and extrapolates from these statements that Husband found no fault with the judgment. Such a contention is not supported by a careful reading of both Wife's motion for reconsideration and Husband's answer.

██ Wife then argues, alternately, that Husband is estopped from raising points of error as to child support and maintenance because he has been paying wife both child support and maintenance as per the judgment. Since Husband has acquiesced to the judgment, she contends that he cannot now challenge the trial court's award. Wife's argument is without merit, at least as to future payments. Although Husband may have "waived any complaint as to maintenance payments paid since the entry of the decree by paying those amounts, he has certainly not waived the right to appeal as to future payments." *Newport v. Newport,* 759 S.W.2d 630, 632 (Mo.App. 1988). Husband may challenge the award as to his future obligation.

Accordingly, Wife's motion to dismiss Husband's cross-appeal is denied and this court will address Husband's allegations of error.

### B. HUSBAND'S APPEAL

### 1. CHILD SUPPORT

Husband contends the trial court erred in entering $7,900 as Husband's monthly gross income in the court's Form 14 calculations. He argues that this gross monthly income figure is not supported by the record as Husband testified that he a yearly income of $79,000.

██ Income, for Form 14 purposes, consists of "a financial benefit or money received by a parent that could have a positive impact on the parent's ability to support the parent's children." Directions, Comments for Use and Examples for Completion of Form No. 14, Line 1: Gross Income, Comment A. Employer-provided insurance benefits are considered a financial benefit and, thus, considered income for the purposes of Form 14. *Smith v. White,* 114 S.W.3d 407, 413 (Mo.App. 2003) (*citing Farr v. Cloninger,* 937 S.W.2d 760, 764 (Mo.App.1997)).

Greashaber, Husband's supervisor at Aquila, testified that Husband's annual contract rate of pay was $79,244. That number, however, did not include any "bonuses or incentive pay or goal pay ... [or]

other compensations." Greashaber also testified to a pay stub that indicated, as of November 25, 2005, Husband had earned $86,054.56. Greashaber indicated that the gross earnings on the pay stub included bonuses as well as the value of employer provided benefits such as medical, dental, and vision insurance. The trial court used this figure to calculate Husband's gross monthly earnings of $7,900 [8] as the trial court, in its discretion, may include these benefits as gross income. *Id.*

■ The trial court's inclusion of the value of benefits and bonuses in Husband's gross income was not error. The trial court's use of $7,900 as Husband's gross income in the Form 14 is supported by sufficient, competent evidence in the record. Point denied.

### 2. AWARD OF MAINTENANCE

Husband next claims that the award of maintenance was not supported by the record in that the trial court did not make any findings as to the actual amount of wife's reasonable necessary, monthly expenses. Further, he claims that the award of maintenance is inconsistent with the trial court's imputation of income.

■ An award of maintenance is proper after the trial court finds that the spouse: (1) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; and (2) is unable to support herself through appropriate employment. Section 452.335.1. If these threshold requirements are met, the trial court may "award maintenance in an amount and for a period of time as the court deems just" after considering the factors set forth in Section 452.335.2. *Donovan v. Donovan,* 191

S.W.3d 702, 705 (Mo.App.2006). Where the trial court makes no specific findings as to the award of maintenance, this court reviews the award of maintenance only for an abuse of discretion. *Id.*

Here, the trial court found that statutory prerequisites of Section 452.335.1 were met and an award of maintenance was appropriate. Husband now argues that the trial court erred in its conclusion because it "did not make any findings as to the actual amount of wife's reasonable, necessary, monthly expenses." Therefore, he contends, the court's conclusion that she could not meet her monthly expenses was speculative. However, the parties did not request findings as to the award of maintenance, and this court will only review the award of maintenance for an abuse of discretion.

■ Where the award is reviewed for an abuse of discretion, "[t]o justify a change in the amount on appeal, the amount of maintenance awarded must be unwarranted and wholly beyond the means of the spouse to pay. The party challenging the award has the burden to demonstrate that the amount is so excessive as to constitute an abuse of the trial court's discretion." *In re Marriage of Novak,* 83 S.W.3d 597, 600 (Mo.App.2002) (internal citations omitted).

■ Husband argues that the trial court engaged in speculation in finding that wife could not meet her monthly expenses and that the trial court's imputation of income to Wife is inconsistent with its order of maintenance. However, Husband does not demonstrate that the trial court's award was unwarranted, beyond his means to pay or so excessive as to constitute an

---

8. Through November 25, 2005, Husband earned $86,054 for a weekly income of $1,831, yearly income of $95,209, or a monthly income of $7,934. The trial court rounded the monthly figure down to $7,900 for use in its Form 14 calculation.

abuse of the trial court's discretion. This point is denied.

### C. Motion For Cost Of Transcript

 Wife filed with this court a motion to compel Husband to pay for one-half the transcript on appeal. Where more than one appeal is taken from the same judgment, "a single record on appeal may be prepared with each appellant sharing the cost." Rule 81.14(a). Here, Husband has cross-appealed the judgment and decree of dissolution and is, therefore, liable to share in the cost on appeal. The transcript was required for the appeal pursuant to Rule 81.12(a); the cost, $2,256.75, was borne by Wife. Accordingly, Husband is hereby ordered pay Wife $1,128.37 to reimburse her for one half the cost of the transcript.

### IV. Conclusion

In accord with Wife's motion for transcript costs, Husband is hereby ordered to pay Wife $1,128.37 for the cost of one-half of the transcript. Additionally, pursuant to Rule 84.14, the mathematical error in the trial court's judgment is amended to reflect that Wife received $184,699 in marital property. The remaining provisions of the trial court's judgment and decree of dissolution of marriage, dated March 3, 2006, are affirmed.

All concur.