**Alexandra Ileana VOINESCU, Appellant–Respondent,**

v.

**Michael Theodore KINKADE, Respondent–Appellant.**

**Nos. WD 68741, WD 68742.**

Missouri Court of Appeals, Western District.

Nov. 25, 2008.

D. Adam Leatherwood, Regina K. Bass, Kansas City, for appellant/respondent.

Helen L. Wade, Columbia, for respondent/appellant.

Before DIV III: ELLIS, C.J., HARDWICK and DANDURAND, JJ.

LISA WHITE HARDWICK, Judge.

This appeal and cross-appeal arise from a judgment dissolving the marriage of Alexandra Voinescu ("Mother") and Michael Kinkade ("Father"). Both parties challenge the circuit court's determination of child custody and child support. Father also challenges the award of maintenance to Mother. For reasons explained herein, we affirm the child custody award and reverse and remand the child support and maintenance awards.

FACTUAL AND PROCEDURAL HISTORY

Mother and Father were married in Columbia, Missouri, on October 28, 2000. Their daughter, Maia Emilia ("Child"), was born on January 26, 2006. Mother filed a petition for dissolution of marriage on January 12, 2007, and Father filed a cross-petition on January 31, 2007.

At the time of the dissolution proceedings, Mother, a board-certified physician in internal medicine, was completing a nephrology fellowship training program at the University of Missouri. Father was employed as a physician with Medi–Quick in Moberly, Missouri, and worked part-time with Occupational Medicine of Mid–Missouri in Columbia. He resigned the part-time job in April 2007.

The parties stipulated to the division of marital property, with Father maintaining the marital home. The court held a four-day trial on the child custody, child support, and maintenance issues. Mother sought to relocate with Child to New Mexico, where she had a job offer in nephrology. She presented three alternative parenting plans, two of which involved her relocating with sole custody of Child, and the other provided for her to remain in Columbia with Child under a joint custody arrangement. Father's parenting plan proposed a joint custody arrangement, with Child remaining in Columbia regardless of whether Mother chose to move to New Mexico.

The court rejected the parenting plans of both parties. The court's judgment awarded the parties joint physical and legal custody, with Father's home in Columbia designated as Child's residence for educational purposes. The court's parenting plan allowed the parties to rotate custody "week on/week off" with a mid-week three-hour period of parenting time during the off week.

The judgment ordered Father to pay $386 per month in child support until Mother's nephrology fellowship ended on June 30, 2007, and then $458 in child support thereafter. The judgment also ordered Father to pay $1,500 per month in modifiable maintenance. The child support and maintenance awards were based on the court's assumption that Mother would be unemployed when her fellowship ended.

Both parties filed motions to amend, modify, or correct the court's judgment. The court denied the motions, and both parties appeal.

## STANDARD OF REVIEW

Our review of this court-tried case is guided by the principles of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We must affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

## MOTHERS APPEAL

### A. CHILD CUSTODY AWARD

■ In her first point on appeal, Mother contends the court erred in determining that it was in Child's best interest to designate Father's residence as her address for mailing and educational purposes. Mother asserts this determination was against the weight of the evidence and that the court failed to make the proper findings under Section 452.375.[1]

In dissolution cases where the parties have not agreed on a custodial arrangement, Section 452.375.6 requires the circuit court to make written findings detailing the specific "best interest" factors that support the court's chosen arrangement.[2] The purpose of the required findings is to allow for more meaningful appellate review. *Huber ex rel. Boothe v. Huber*, 174 S.W.3d 712, 716 (Mo.App.2005).

The dissolution judgment in this case includes a detailed analysis of the eight best interest factors as they relate to the parties' proposed parenting plans. The court concluded that the first (wishes of

1. All statutory references are to the Revised Missouri Statutes 2000, unless otherwise indicated.

2. Section 452.375.2 identifies the following "best interest" factors for custody determinations:
    (1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;
    (2) The needs of the child for frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
    (3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;
    (4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;
    (5) The child's adjustment to the child's home, school, and community;
    (6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights, and the parent or other family or household member who is the victim of domestic violence from any further harm;
    (7) The intention of either parent to relocate the principal residence of the child; and
    (8) The wishes of a child as to the child's custodian.

parents) and eighth (wishes of child) factors favored neither party; the second (child's need for relationship with both parties), third (interaction with family) and sixth (mental and physical health) factors favored both parties; the fourth (parent more likely to allow contact with other parent) and seventh (intention to relocate) factors favored Father; and the fifth (child's adjustment to home) factor did not favor Mother's relocation proposal. The court noted that two of Mother's proposed parenting plans involved her relocating to New Mexico with sole custody of the Child. The court rejected the relocation proposals because they would not allow both parents to have a frequent, continuing, and meaningful relationship with the Child. The court also rejected Mother's joint custody proposal for a week-on/week-off schedule because it did not provide for mid-week visitation. The court rejected Father's joint custody proposal for a two-day/three-day rotation because it would likely be unworkable if Mother had a job with a weekly on-call schedule. Ultimately, the court ordered joint physical custody with a week-on/week-off parenting schedule and a mid-week visitation for the week-off parent. As such, the written findings in the judgment are sufficient to provide for meaningful review of the court's "best interest" determination under Section 452.375.6.

Mother argues that the findings do not specifically address the reasons for the court's designation of Father's home as the Child's address for mailing and educational purposes. However, under the fifth factor, the court found that the Child was "well-adjusted in her home" and there was evidence that, despite her young age, she was familiar with her residence and neighborhood. Father was awarded the marital home and had expressed his intention to remain in the Columbia area. Mother was living in temporary quarters and her ne-

phrology fellowship was coming to an end, leaving her future employment unclear. The court also noted, under the sixth factor, that Mother had expressed a "preference" for relocating (although she did not desire to do so without the Child). This finding rebuts Mother's argument that the court assumed she *intended* to move to New Mexico when, in fact, she merely expressed a preference for doing so if her proposed parenting plan was approved. The findings and the facts in the record are sufficient to support the designation of Father's residence as the Child's mailing address.

Mother also argues that the mailing address designation was against the weight of the evidence showing that Father was verbally and physically abusive. At trial, Mother testified that Father frequently insulted her and made belittling comments in order to control her behavior, the family finances, and matters related to child care. Mother described an incident when Father bruised her arm by grabbing her. She described another incident when her finger was broken as a result of Father slamming a door on it.

In response, Father acknowledged the two incidents but denied any intention to harm Mother. He felt that Mother was inexperienced with infants and that he knew more about childcare because he had worked in pediatrics. When Mother's arm was bruised, Father said he had grabbed it to keep from rolling off the narrow couch where they were sleeping with the Child. Father also testified that Mother's finger was accidentally broken when he closed the door at the end of an argument that had occurred in the Child's room.

The sixth factor of the best interest test required the court to consider "[t]he mental and physical health of all individuals involved, including any history of abuse of

any individuals involved." § 452.375.2(6). If the court found a pattern of domestic violence, but determined custody with the abusive parent was in the best interests of the child, the court was then required to make written findings of fact and conclusions of law justifying that determination. § 452.375.13. In this case, however, the court found that allegations of abuse did not arise until the last few months of the six-year marriage:

The court finds that this factor favors both parents.

i. Neither parent nor the child has any mental or physical health issues.

ii. Mother alleges violence on the part of [Father] which occurred after the birth of [Child] and while the marriage of the parties was disintegrating.

iii. No allegations of physical abuse were alleged to have occurred prior to or shortly before the final breakdown of the marriage.

iv. Mother alleges Father was controlling.

v. Court does not find that Father's conduct constitutes abuse.

vi. Prior to [Child's] birth [Mother] and [Father] had a very positive relationship and appeared to enjoy one another.

Evidence in the record supports the circuit court's findings that there was no history of abuse or pattern of domestic violence. The parties had differing accounts of the alleged incidents of alleged verbal and physical abuse. Additional witnesses testified in support of both parties' positions.[3] The trial court was free to believe or disbelieve all, none, or part of any witness's testimony, and we must defer to its assessment of witness credibility. *Russ v. Russ*, 39 S.W.3d 895, 898 (Mo.App. 2001). After weighing the conflicting testimony, the court apparently found Father's account to be more credible. The court's finding that there was no pattern of abuse is not against the weight of the evidence. Point denied.

B. CHILD SUPPORT AWARD

■ Mother contends the circuit court abused its discretion in calculating the child support award because it failed to consider the income Father received from his part-time job with Occupational Medicine of Mid–Missouri. Mother suggests that Father quit the part-time job just a few weeks before trial in order to avoid paying a higher amount of child support. She argues the court's Form 14 calculation should have imputed the additional income as an accurate measure of what Father could earn by using his "best efforts" to gain suitable employment. See *Donovan v. Donovan*, 191 S.W.3d 702, 706 (Mo.App. 2006).

The record indicates that Mother submitted at least two Form 14's at trial, one of which reflected Father's income without his part-time job. In so doing, she acquiesced in the court's consideration of the lower income amount and has waived any

---

3. For example, both Father's mother ("Paternal Grandmother") and Mother's mother ("Maternal Grandmother") testified at trial. There was clearly conflict between the two witnesses and each was supportive of the actions of their own child as the marriage began to deteriorate. Maternal Grandmother testified that she witnessed instances of Father's verbal abuse and the incident when Mother's finger was broken. Paternal Grandmother testified that Mother was not attentive to the needs of the Child and that Father did all of the cooking and childcare. There was also testimony from other family and friends that Mother's emotional state changed after the birth of the Child, as she was frequently tearful, lost weight, and seemed overwhelmed. In light of these circumstances, the court reasonably could have believed that Mother's perception of the alleged abuse was clouded by her emotional state.

488

allegation of error on appeal. *Blevins v. Blevins,* 249 S.W.3d 871, 875 (Mo.App. 2008). Moreover, we note, *ex gratia,* that the court had reasonable grounds for calculating the child support without the secondary income in light of the joint custody arrangement that gave Father significant parenting time. As the court explained:

> Although [Father] has had additional employment in the past, the court finds that the custodial arrangement for the minor child and the dissolution of the parties' marriage make it unlikely that [Father] will continue the secondary employment.

The court's award is only reviewable for abuse of discretion. *L.J.S. v. F.R.S.,* 247 S.W.3d 921, 929–30 (Mo.App.2008). Finding no such abuse, we deny the point on appeal.

## FATHERS APPEAL

### A. MAINTENANCE AWARD

■ Father asserts the circuit court erred in awarding maintenance because: (1) Mother failed to show that she was unable to support herself through appropriate employment; and (2) the court failed to consider the marital property awarded to Mother. Based on these deficiencies, Father contends the maintenance award is unsupported by substantial evidence, is against the weight of the evidence, and erroneously declares and applies Section 452.335.

A trial court can award maintenance to a spouse if it finds that the spouse: (1) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs and (2) is unable to support herself through appropriate employment. § 452.335.1. The spouse seeking maintenance has the burden of establishing both of these threshold requirements. *Donovan,* 191 S.W.3d at 705. The trial court has broad discretion to award main-

tenance, and we review its decision only for abuse of discretion. *Garrison v. Garrison,* 255 S.W.3d 37, 40 (Mo.App.2008); *Donovan,* 191 S.W.3d at 706.

The circuit court determined that Mother had reasonable monthly expenses of $1,476 and that she would be unemployed when her nephrology fellowship ended on June 30, 2007. The court made a finding that Mother is entitled to $1,500 in monthly maintenance because she "lacks sufficient marital property apportioned to her to provide for her reasonable needs and is unable to support herself through appropriate employment effective July 1, 2007." Father contends the latter finding is against the weight of the evidence showing that Mother is capable of supporting herself as a physician who is board-certified in internal medicine and board-eligible in nephrology.

The evidence at trial established that Mother had obtained a post-fellowship job offer as a nephrologist in New Mexico, but she intended to decline that position if the court did not approve her request for sole custody and relocation of the Child. Mother had been unable to find a nephrology job in the Columbia area, but she also testified that she had not alternatively applied for any positions in internal medicine. Father presented evidence that there were at least three internist positions available in Jefferson City and two in Columbia at the time of trial. The salaries for those positions ranged from $132,000 to $174,000 annually. Mother testified that she would remain in Columbia and apply for internal medicine positions if the court did not approve her relocation request.

■ We find no indication that the court considered Mother's education, experience, and earning potential in determining that she would be unable to support herself through appropriate employment when the

nephrology fellowship ended on June 30, 2007. As a general rule, "[a] trial court may impute income to a spouse based upon what he or she could earn using his or her best efforts to gain employment suitable to his or her capabilities." *In re Marriage of Cranor*, 78 S.W.3d 150, 157 (Mo.App.2002). In evaluating Mother's maintenance claim under Section 452.335, the court should have considered whether there was available employment "appropriate to [her] skills and interests." *Witt v. Witt*, 930 S.W.2d 500, 504 (Mo.App.1996) (overruled on other grounds, *Hill v. Hill*, 53 S.W.3d 114, 116 (Mo.banc 2001)). The court abused its discretion in failing to do so.

Father also argues the maintenance award was erroneous because the circuit court failed to consider whether Mother could use marital property to help meet her reasonable needs. The dissolution judgment awarded Mother a lump sum cash payment of $51,090 to equalize the marital property division, bank accounts totaling $2,241, and a certificate of deposit valued at $25,829. Mother's marital property award included a total of $79,200 in liquid assets. Father contends these assets could be invested at a return rate of 5% annually, from which Mother could earn $330 monthly to defray her reasonable expenses.

Under Section 452.335, the court was obligated to consider Mother's marital property award in determining her need for maintenance. Nothing in the judgment or the record reflects consideration of the cash assets awarded to Mother in the marital property division. The court abused its discretion in awarding maintenance without determining whether Mother could have supported herself with the combined resources of her marital property and potential employment. Accordingly, the maintenance award is reversed and remanded for further consideration in this regard.

B. CHILD SUPPORT AWARD

In his final point, Father contends the circuit court erred in calculating child support because it failed to impute any income to Mother beginning in July 2007, upon the conclusion of her nephrology fellowship. The court ordered Father to pay $485 in monthly child support and rejected his request to impute $100,000 in income to Mother based on her potential employment as an internist or nephrologist. Father argues that Mother was capable of full-time employment, and, thus, the court abused its discretion in failing to impute at least minimum wage earnings for her on the Form 14.

"An award of child support is within the sound discretion of the trial court." *Bullard v. Bullard*, 969 S.W.2d 880, 883 (Mo.App.1998). Within that discretion, the court can consider "the past, present, and anticipated earning capacity" of a parent in determining his or her ability to pay child support. *Id.* Those considerations include "employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, and prevailing job opportunities." *Id.* In proper circumstances, a court can impute income to a parent according to what he or she could have earned by the use of best efforts to gain suitable employment. *Jones v. Jones*, 958 S.W.2d 607, 612 (Mo.App.1998). The job opportunities considered, for purposes of imputing income, should be those available within a reasonable distance of the parent's home. *Payne v. Payne*, 206 S.W.3d 379, 385 (Mo.App.2006). When a parent is capable of full-time employment, it can be an abuse of discretion to fail to attribute at least minimum wage earnings to an underemployed or unemployed parent. *Jones*, 958 S.W.2d at 611–13.

Mother argues that imputation of income is only appropriate when a parent voluntarily reduces his or her employment or loses a job and does not make a good faith effort to find a new one. See *Krepps v. Krepps,* 234 S.W.3d 605, 612 (Mo.App. 2007); *Payne,* 206 S.W.3d at 384. However, these factors are not the exclusive considerations. "What constitutes the appropriate circumstances to impute income is fact-dependent and must be determined case-by-case." *Payne,* 206 S.W.3d at 385.

Here, the evidence established that Mother was qualified to work as an internist and there were internist positions available in and around her local community. Despite the fact that there were no positions available in her specialty as a nephrologist, Mother expressed her intention to find suitable employment in the Columbia area if the court denied her relocation proposal. The court abused its discretion in failing to consider that Mother was capable of full-time employment and of contributing to the support of her child. Accordingly, the child support award is reversed and remanded for further proceedings. On remand, the court shall determine a reasonable amount of income to impute to Mother and re-calculate the Form 14 in order to render a child support award that is supported by the evidence.

CONCLUSION

We reverse the dissolution judgment with regard to the maintenance and child support awards, and remand to the circuit court for further proceedings in accordance with this opinion. In all other respects, the judgment is affirmed.

All Concur.